GRIFFIN *vs.* AUGUSTA & KNOXVILLE RAILROAD.

1. While the constitution of 1877 (Code, §5024) provides that private property shall not be taken or damaged for public use unless just and adequate compensation be first paid, yet where a land-owner permitted a railroad company to lay out and construct its road through his land, and appropriate timber thereon, without any objection until the road had been completed and equipped at large expense, his property forming but a small fraction thereof, he could not then enjoin the use of the entire road until his damages should be assessed and settled. One cannot stand by and suffer another to expend large amounts of money on his land as a part of a great system of improvement, and then stop by injunction the entire system until he is paid.

(a.) This case differs from, and is stronger than, that in 65 *Ga.*, 614.

2. Besides the charter prescribes a complete remedy at law.

April 10, 1883.

Constitutional Law. Damages. Railroads. Actions. Injunction. Before Judge RONEY. McDuffie County. At Chambers. March 9, 1883.

On February 19, 1883, Mrs. Griffin filed her bill against the Augusta & Knoxville Railroad Company, alleging, in brief, as follows: Since 1867 she has been the owner of

a plantation in Columbia county, known as the "Home place," containing sixteen hundred acres, about three hundred and seventy-five acres being under cultivation and the balance being heavily timbered and used for pasturage. On October 15, 1879, the railroad took from her for its own use a strip of land two hundred feet wide and a mile and three-quarters long, extending from one end of her plantation to the other. The company constructed its track on this strip, took one thousand and fifty cross-ties, twelve hundred cords of wood, quantities of clay, sand, stone, earth, etc.; made great excavations on parts of the land, rendering them unfit for cultivation, causing stagnant pools of water, and injuring the healthfulness of the place. The embankments were so constructed as to interfere with the natural drainage of the land, and thereby caused damage. The company is daily running its engines and trains over this track, necessitating the construction of expensive lines of fencing, rendering access from one part of the plantation to another unsafe. The company has continuously, since October 15, 1879, taken and damaged complainant's property without her consent and without having made any adequate compensation therefor. The company is insolvent. Its capital stock is $130,000.00, its bonded debt, $630,000.00. It has defaulted in paying the interest on its bonds in January, 1883, and is endeavoring to sell, lease, assign, transfer or otherwise dispose of its franchise and property to persons unknown, but believed to be non-residents of Georgia.

The prayer was for the payment of proper damages, and that the company be enjoined from disposing of its franchises in any way, and from further damaging complainant or taking or using her property until the payment of damages to her; also for subpœna and general relief.

The answer was, in brief, as follows: Defendant laid out its roadway one hundred and twenty feet wide and one and one-half miles long through complainant's land,

with her consent and approval, two-thirds of the strip so taken being an old field grown up in pines. Defendant built its road on this strip, and has been running its trains ever since. All the other trespasses and items of damage alleged in the bill are denied. Complainant is benefited by the road passing through her land. The road was constructed in the fall of 1878, instead of 1879, and a claim for damages resulting from such construction is barred by the statute of limitations. The capital, bonded indebtedness and default in the payment of interest are admitted, but insolvency is denied, and the value of the property is stated to be more than the indebtedness. It is admitted that for a good offer the company would sell or lease its property, but not for less than enough to pay its debts and give the stockholders a dividend. Besides, such sale or lease would have no effect upon complainant's claim.

Upon the hearing, the chancellor refused the injunction, and complainant excepted.

SALEM DUTCHER, for plaintiff in error.

GANAHL & WRIGHT, for defendants.

JACKSON, Chief Justice.

1. This record brings before us the sole point whether the refusal of the injunction by the chancellor to enjoin a railroad company, which had completed and equipped its road at the cost of hundreds of thousands of dollars, from running its road through the complainant's land, which was part of the road-bed so completed and used by it, until the damage for the right of way and cutting down and using the timber thereon was assessed,—the entry of the company thereon and use thereof as a right of way and the appropriation of the timber on the right of way not having been legally objected to until the whole road was built and equipped. We think it would have been inequitable to grant the injunction prayed for, under the

facts. The road has not been sold and the original company substituted by a foreign corporation to which the franchise had passed, nor had judgment for damages been rendered as in the case of *Gammage et al. vs. The Georgia Southern Railroad Company*, in 65 *Ga.*, 614; though even in that case, the refusal of an injunction was affirmed by this court. The question of the insolvency of the company in the case at bar is denied, and that fact is contested by proof, and the chancellor has passed upon it.

It is true that, under the constitution of 1877, private property cannot be taken or damaged for public use, unless just and adequate compensation be first paid. Art. 1, Sec. 3, Par. 1; Code, 5024; but if the owner allow it to be taken or damaged without legal opposition thereto until an immense sum of money has been expended in completing and equipping an entire road, of which his land is but a fractional part, of comparatively little value, it would not do to enjoin the franchise to the use of the entire road until that damage and occupancy were assessed and settled. One cannot stand by and suffer another to expend money to large amounts on his land, as part of a great system of improvement, and then stop by injunction the entire system until he is paid. He must move *in limine*. He must defend at the threshold. *Vigilantibus non dormientibus jura subveniunt.* *Laches* is a lock to the door of equity, which few keys, if any, are strong enough to open. Certainly none will open it when it has caused the expenditure of money which cannot be repaid, and caused injury which cannot be repaired. Pierce on Railways, 168 and cases cited; *Wood et al. vs. The Macon & Brunswick Railroad Company*, 68 *Ga.*, 539.

2. Besides, the charter prescribes a complete remedy at law. 2 Redfield, 346 and cases cited. Charter of company: Acts, 1877, p. 228, Sec. 10, p. 231.

Judgment affirmed.