BEERS v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. August 1, 1905.)

No. 1,143.

1. INJUNCTION—ALTERNATIVE RELIEF—LACHES.

To authorize a decree for damages as an alternative for an injunction, a case in equity must be made, and laches which would defeat the right to an injunction will also defeat the right to the alternative relief.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 816, 817; vol. 27, Cent. Dig. Injunction, §§ 414–416.]

2. EMINENT DOMAIN—REMEDIES OF PROPERTY OWNERS—INJUNCTION—DAMAGES—LACHES.

A property owner, who, with knowledge of a city ordinance requiring a railroad company to elevate its track on a street in front of his property, the necessary result of which would be to occupy the entire street, permits the work to be done and a large amount of money to be expended in the same by the company, is chargeable with laches which will defeat his right to an injunction or to an award of damages in equity as an alternative relief.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 783–786.]

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

The facts are stated in the opinion.

Frank Crozier, for appellant.

Chas. B. Keeler, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion.

The bill in the Circuit Court was to enjoin the maintenance by appellee of its elevated railway tracks in a street in front of the appellant's lots, and to compel the removal of the tracks thus elevated. The bill asks, in addition, that appellee may be decreed to pay to appellant the damages sustained by reason of the trespass on his lots, and render reasonable compensation for the use thereof, and for other relief. The bill is predicated upon the theory that the street, occupied by appellee's elevated tracks, is a public street, and that though the occupation was under an ordinance regularly passed by the Council of the City of Chicago, the City of Chicago was wholly without power to devote such street to the purposes of track elevation; wherefore, the appellant, an abutter on the street, dependent upon such street for ingress and egress, and cut off from the same by the elevation in question, is entitled to an order removing the embankment, or (as stated in oral argument at bar) to an ascertainment in equity of the damages sustained, and an order for their payment.

Among other defenses to the bill thus stated, the appellee asserts that appellant has been guilty of laches. The bill was dismissed for want of equity by the Circuit Court.

Appellant is the owner of lots fronting on Bloomingdale road, occupied since 1872 by the tracks of the appellee's railroad. Under an ordinance of the city, of February 21st, 1898, requiring an elevation of appellee's tracks, work was begun in March, 1898, and finished during that year. The work thus ordered, carried appellee's elevation in front of, and beyond appellant's lots; but in front of appellant's lots, the elevation was already descending to the surface, so that it constituted an embankment variously estimated as averaging from two and one-half feet, to eight feet in height, on either side of the base of which in the street was width sufficient to afford ingress to, and egress from, appellant's lots.

January 13th, 1902, the city passed another ordinance, ordering the extension of the elevation westward. The effect of this ordinance was to raise the earth embankment, opposite appellant's lots, to the standard height of twelve feet, and to extend the base of the embankment to the full width of the street. Both this ordinance, and the preceding one, provided that the side slopes and lateral dimensions of the embankment should be determined by the natural angle of repose of the material used; and there is no averment or evidence, that in extending the width of the base of the embankment, this natural angle was exceeded. Work under this later ordinance was commenced in April, 1902, and prosecuted continuously up to August 2nd, 1902, when the bill was filed. At

the time of filing the bill, the embankment was practically completed. In constructing the first elevation the railroad, approximately, expended seven hundred and fifty thousand dollars, and the second elevation cost upwards of two hundred thousand dollars, in addition to which a sum of over one hundred thousand was contracted, by appellee, for structural steel for subway viaducts on the line of the road covered by the new embankment.

The appellant resides at Geneva, Illinois, distant from Chicago less than one hundred miles. He became the owner of these lots in 1893. He was called as a witness on his own behalf in the Circuit Court, but did not testify respecting either his knowledge or his ignorance of these ordinances; or his knowledge or his ignorance of the elevation work done under them. And the sole averment in the bill, relating to knowledge or ignorance, is that on or about the 6th of July, 1902, appellant's attention was first called to the fact that appellee was erecting the second embankment. Even this was not under oath, for the bill does not seem to have been verified.

That laches is shown on the face of this record seems to us to be without doubt. The ordinance of 1898, four years before the bill was filed, established the policy of the city in the way of requiring appellee, within the city limits, to elevate its tracks. No one knowing this fact could have doubted that that ordinance, though not extending at that time the embankment in full dimensions in front of appellant's lots, would be followed, in time, by an embankment that would be of full dimensions. The ordinance showed what the character of that embankment would be—its standard height of twelve feet, and the angle of repose—and that this would result in occupying the whole of the street in front of the lots as a base for the embankment.

Under these circumstances, the ordinance of January, 1902, could have been no surprise to the owners of abutting lots. And in the absence of distinct evidence, from the appellant himself, that he was ignorant, either of the passage of the ordinance in January, or the commencement of the work in April, we are not justified in believing otherwise than that he had knowledge; and though the burden of showing laches may have been on the appellee, in the first instance, that burden is fully met, when the facts disclosed create the probability that the complaining party has had such knowledge as, under the circumstances named, would constitute laches.

But it is urged in argument, that though laches appear, whereby a right to an affirmative injunction no longer exists, the alternative right of determining, in equity, appellant's damages, and ordering its payment, is not thereby lost. The proposition is not sound. The ascertainment in equity, as an alternative for an injunction, of the damages suffered, is only the form that a decree may take, when, within the discretion of the court an affirmative injunction ought not to be issued. But for a decree of this form, as well as for a decree for an injunction, there must first be established a case in equity. Until that time the party obtains no foothold in equity. Laches prevents such foothold. Laches being disclosed, no cause in equity exists—the party being already remitted, at the time of the filing of the bill, to his remedies at law.

The decree appealed from is affirmed.