KIPP *v.* STATE HIGHWAY COMMISSIONER.

1. Appeal and Error—Questions Reviewable—Title of Land upon
   Vacation of Portion in Center of Street.

   Whether or not title of small triangular-shaped piece of land
   adjacent to center line of street which formed boundary of
   plat would vest in owner of lot abutting side of street in plat
   about 20 feet from triangular piece upon vacation thereof is
   not discussed where other facts and principles are controlling
   (3 Comp. Laws 1929, § 13262).

2. Limitation of Actions—Action for Damages.

   An action at law for damages arising because of erection of em-
   bankment and viaduct 15 feet high for railroad in part of
   street in front of plaintiffs' lot would have been barred after
   lapse of five years (3 Comp. Laws 1929, § 13976).

3. Estoppel—Ejectment—Trespass.

   Plaintiffs who waited five years before commencing either an
   action of ejectment or trespass against railroad which built
   an embankment and viaduct 15 feet high in portion of street
   in front of their lot would be confronted by defense of estop-
   pel.

4. Equity—Conscience—Good Faith—Diligence.

   Generally nothing can call forth the court of chancery into ac-
   tivity except conscience, good faith and reasonable diligence
   and, when these are wanting, the court is passive and does
   nothing.

5. Same—Laches· as Defense.

   Laches or staleness of demand constitutes a defense to the en-
   forcement of the right of demand so neglected.

6. Same—Doctrine of Laches.

   The doctrine of laches is founded upon long inaction to assert
   a right, attended by such intermediate change of conditions
   as renders it inequitable to enforce the right even though the
   statute of limitations has not run, especially where the subject-
   matter of the controversy is a public work.

7. EMINENT DOMAIN—DEFENSES—REMEDY OF LANDOWNER.

It is a good defense to an action or proceeding by an owner of land, taken for an improvement, that a different and exclusive remedy has been provided by statute, and that he has suffered no injury in a legal sense by reason of the alleged taking.

8. SAME—LACHES—EQUITY.

Laches is a good equitable defense to an action or proceeding by a landowner for taking of land for public use both in equity and in actions at law in jurisdictions where equitable defenses may be set up in actions at law, and delay for an unreasonable length of time, when coupled with either the fact that defendant has incurred great expense relying upon such acquiescence or with the fact that the interests of the public have become involved, will ordinarily be held to constitute laches and a good defense.

9. INJUNCTION—EQUITY—TECHNICAL RIGHTS—REMEDY AT LAW.

A court of equity is not bound to issue an injunction requiring removal of tracks which were erected without legislative authority or municipal consent over the center of a street, where such order would produce great public or private mischief and would merely protect technical rights, an action for damages being the proper remedy in such case.

10. EMINENT DOMAIN—ESTOPPEL—INJUNCTION—RAILROADS.

A landowner cannot permit a railroad company to spend a large amount of money in building tracks over his property and after the completion thereof stop such use by injunction.

11. SAME—RAILROADS—TRESPASS—INJUNCTION—DAMAGES.

A trespassing railroad company may be ejected from land or enjoined from using it if the landowner proceeds with reasonable promptness, but if he acquiesces until the road has been constructed across his land and has become a part of the railroad line, in which the public has acquired an interest, his only remedy is in action for damages.

12. SAME—LACHES—RAILROADS—INJUNCTION.

Lot owners who permitted erection of high embankment and railroad tracks as part of a system of viaducts covering a portion of street in front of their lot, constructed at enormous cost by railroad company, State and city without question as to propriety until five years after completion were barred by

laches from remedy of injunction based on alleged ownership of vacated portion of street occupied by embankment (3 Comp. Laws 1929, § 13262).

13. EQUITY—LACHES—PLEADING—DISCRETION OF COURT.
Courts of equity withhold relief from those who have delayed the assertion of their claims for an unreasonable time and this doctrine may be applied in the discretion of the court even though the laches are not pleaded.

· Appeal from Oakland; Doty (Frank L.), J. Submitted June 15, 1938. (Docket No. 17, Calendar No. 40,040.) Decided October 5, 1938.

Bill by Alvin E. Kipp and wife against Murray D. Van Wagoner, State Highway Commissioner, Grand Trunk Western Railroad Company and City of Royal Oak for an injunction enjoining the use of land. Decree for defendants. Plaintiffs appeal. Affirmed.

*Arthur E. Moore,* for plaintiffs.

*H. V. Spike* and *John J. Gafill,* for defendant Grand Trunk Railway Co.

*Raymond W. Starr,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant State Highway Commissioner.

McALLISTER, J. Plaintiffs are the owners of property in the city of Royal Oak described as lot No. 182 of Edgewood Park subdivision. The lot faces east on North West avenue, a north and south street. The center line of this street is the dividing line between two subdivisions. The easterly half of the street was dedicated to public use in one plat, and the westerly half of the street was so dedicated in another plat.

In the interest of public safety, and for the purpose of effecting the building of numerous costly grade separations by the erection of a system of viaducts without cost to its citizens, the city of Royal Oak entered into a contract in 1929 with the State of Michigan, represented by the governor and the State highway commissioner, and with the Grand Trunk Western Railroad Company to relocate the right of way of the railroad company. Such relocation embraced the building of a viaduct in a northwesterly diagonal direction across North West avenue. The viaduct crossed the street at an angle directly in front of plaintiffs' property. The relocated right of way and embankment, however, does not touch plaintiffs' lot in crossing the street, but covers nearly the entire easterly or opposite half of the street in front of plaintiffs' lot. The westerly half of the street, directly in front of plaintiffs' lot, and adjoining it, is free from the obstruction of the viaduct except for a small triangle of land, lying along the center line of the street, where the viaduct crosses the street diagonally, the north line of the said triangle projecting a few feet into plaintiffs' side of the street. This small triangular portion of land is approximately 20 feet from plaintiffs' lot at its nearest point. If plaintiffs' lot were extended easterly *to the center line of the street,* this small portion of land would be the northeasterly corner of the lot.

Defendant city claims that it vacated the easterly side of the street together with the triangular portion lying in the westerly side of the street, in order to carry out the relocation of the right of way. Plaintiffs claim that on such vacation this island of land lying near the center of the street although not touching their property would vest and revert

to them as adjoining owners under the provisions of 3 Comp. Laws 1929, § 13262 (Stat. Ann. § 26.495). Whatever the merit of this contention, it is unnecessary to discuss, as other facts and principles are controlling.

Conforming to the terms of the contract above mentioned, the railroad company relocated its right of way and built an embankment 15 feet high on the property in controversy, in 1931. In 1935, plaintiffs received $1,800 in condemnation proceedings brought to determine damages for the violation of building restriction rights caused by the relocation of the right of way. Plaintiffs' bill of complaint was filed June 9, 1936. For a period of upwards of five years plaintiffs made no attempt to assert their alleged rights in this triangular island in the street or to restrain the building of the grade separation which was being erected in the street directly in front of their lot, obviously at tremendous expense, and as part of a system of grade separations in the city of Royal Oak. Plaintiffs had remedies at law if their rights were being violated. They might have brought an action for damages or have proceeded in ejectment. But they have too long delayed their claim for damages in an action at law because of the statute of limitations, 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605); and they would be confronted by the defense of estoppel in an action in ejectment. *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699 (117 Pac. 906, 36 L. R. A. [N. S.] 185); *Weber* v. *Ford Motor Co.*, 245 Mich. 213, 218; *Sliwinski* v. *Gootstein*, 234 Mich. 74; and estoppel would be a defense, as well, in an action for trespass. *Roberts* v. *Railroad Co.*, 158 U. S. 1 (15 Sup. Ct. 756). Plaintiffs, however, neglecting their legal remedies, have chosen to come into equity.

The general rule is that nothing can call forth the court of chancery into activity except conscience, good faith and reasonable diligence. When these are wanting, the court is passive and does nothing. *Sullivan* v. *Railroad Co.,* 94 U. S. 806; and it is a general rule that laches or staleness of demand constitutes a defense to the enforcement of the right or demand so neglected. *Creswill* v. *Grand Lodge Knights of Pythias of Georgia,* 225 U. S. 246, 250 (32 Sup. Ct. 822).

In *Hammond* v. *Hopkins,* 143 U. S. 224, 250 (12 Sup. Ct. 418), through Mr. Chief Justice Fuller, the court said:

"No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred."

In *Galliher* v. *Cadwell,* 145 U. S. 368, 371 (12 Sup. Ct. 873), speaking through Mr. Justice Brewer, it was said:

"The question of laches turns not simply upon the number of years which have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during the lapse of years. The cases are many in which this defense has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all."

" 'The omission to do what one is by law required to do to protect his rights, and which justifies a fair presumption that he has aban-

doned the same, under circumstances which misled or prejudiced an adverse party, may in equity operate as laches which bar the assertion of such right later under changed conditions, even though the statute of limitations has not run.' *Olson* v. *Williams,* 185 Mich. 294, 301.

" 'The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. *Angeloff* v. *Smith,* 254 Mich. 99, 101.' " *School District No. 14, Fractional,* v. *School District No. 1,* 266 Mich. 479, 485.

In *Penn Mutual Life Insurance Co.* v. *Austin,* 168 U. S. 685, 697 (18 Sup. Ct. 223), it is said:

"In *Lane & Bodley Co.* v. *Locke,* 150 U. S. 193 (14 Sup. Ct. 78), and *Mackall* v. *Casilear,* 137 U. S. 556 (11 Sup. Ct. 178), it was held that the mere assertion of a claim, unaccompanied with any act to give effect to the asserted right, could not avail to keep alive a right which would otherwise be precluded because of laches. Indeed, the principle by which a court of equity declines to exert its powers to relieve one who has been guilty of laches as expressed in the foregoing decisions has been applied by this court in so many cases besides those above referred to as to render the doctrine elementary. *Whitney* v. *Fox,* 166 U. S. 637, 647, 648 (17 Sup. Ct. 713) ; *Gildersleeve* v. *New Mexico Mining Co.,* 161 U. S. 573, 582 (16 Sup. Ct. 663) ; *Abraham* v. *Ordway,* 158 U. S. 416, 423 (15 Sup. Ct. 894) ; *Ware* v. *Galveston City Co.,* 146 U. S. 102, 116 (13 Sup. Ct. 33) ; *Foster* v. *Railroad Co.,* 146 U. S. 88, 102 (13 Sup. Ct. 28) ; *Galliher* v. *Cadwell,* 145 U. S. 368 (12 Sup. Ct. 873), where the earlier cases are fully reviewed; *Hoyt* v. *Latham,* 143 U. S. 553 (12 Sup. Ct. 568) ; *Hamner* v. *Moulton,* 138 U. S. 486, 495 (11 Sup. Ct. 408) ; *Richards* v. *Mackall,* 124 U. S. 183, 189 (8 Sup. Ct. 437).

"The reason upon which the rule is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of condition which may have arisen during the period in which there has been neglect. In other words, where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect. The adjudicated cases, as said in *Galliher* v. *Cadwell, supra,* 372, 'proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him now to assert them.' The requirement of diligence, and the loss of the right to invoke the arm of a court of equity in case of laches, is particularly applicable where the subject-matter of the controversy is a public work. In a case of this nature, where a public expenditure has been made or a public work undertaken, and where one, having full opportunity to prevent its accomplishment, has stood by and seen the public work proceed, a court of equity will more readily consider laches. The equitable doctrine in this regard is somewhat analogous to the legal rule which holds that where one who has the title in fee to real estate, although he has not been compensated, 'remains inactive and permits them (a railway company) to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein and be

restricted to a suit for damages.' *Roberts* v. *Railroad Co.,* 158 U. S. 1, 11 (15 Sup. Ct. 756), and authorities there cited. As said in *Galliher* v. *Cadwell, supra,* 373: 'But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an equity founded upon some change in the condition or relations of the property or the parties.' "

It is a good defense to an action or proceeding by an owner that a different and exclusive remedy has been provided by statute; that he has suffered no injury in a legal sense by reason of the alleged taking. 20 C. J. p. 1177.

"It is well settled that where an adequate remedy at law has been available and has been lost by negligence or merely failure to seek it at the proper time, equity will not interfere to grant relief." *J. W. Wells Lumber Co.* v. *Menominee River Boom Co.,* 203 Mich. 14, 34.

Laches is a good equitable defense to an action or proceeding by an owner both in equity and in actions at law in jurisdictions where equitable defenses may be set up in actions of law; and delay for an unreasonable length of time, when coupled with either the fact that defendant has incurred great expense relying upon such acquiescence or with the fact that the interests of the public have become involved, will ordinarily be held to constitute laches and a good defense. *Kamper* v. *City of Chicago,* 132 C. C. A. 84 (215 Fed. 706); *Crescent Canal Co.* v. *Montgomery,* 143 Cal. 248 (76 Pac. 1032, 65 L. R. A. 940); *Bravard* v. *Railroad Co.,* 115 Ind. 1 (17 N. E. 183).

In *Roberts* v. *Railroad Co., supra,* it was held that where a property owner remained inactive and permitted a railroad company to go upon the land, build

a railroad, and make expenditures, although the company did not comply with the statutes requiring an agreement with the property owner or proceedings to condemn, the property owner was estopped from bringing an action of trespass or ejectment and was restricted to a suit at law for damages. See *Beers* v. *Railway,* 73 C. C. A. 273 (141 Fed. 957).

Where a plaintiff permitted a railroad company to construct a road and make expenditures of money, he was held to have waived his right to maintain ejectment or injunction proceedings. *Strickler* v. *Railway Co.,* 125 Ind. 412 (25 N. E. 455) ; *Ferguson* v. *Covington & C. El. Railroad & Transfer & Bridge Co.,* 108 Ky. 662 (57 S. W. 460) ; *Knoth* v. *Railway Co.,* 187 N. Y. 243 (79 N. E. 1015) ; *Griffin* v. *Railroad,* 70 Ga. 164.

A court of equity is not bound to issue an injunction requiring removal of tracks which were erected without legislative authority or municipal consent over the center of a street, where such an order would produce great public or private mischief and would merely protect technical rights. In such case an action for damages is the proper remedy. *Knoth* v. *Railway Co., supra;* and where an abutting owner made no objection to the laying of a railroad track over the highway, he is guilty of laches which prevents the issuance of an injunction. *Maust* v. *Railway Co.,* 219 Pa. 568 (69 Atl. 80). One cannot permit a railroad company to spend a large amount of money in building tracks over his property and after the completion thereof, stop such use by injunction. *Griffin* v. *Railroad, supra.* A trespassing railroad company may be ejected from land or enjoined from using it if the owner proceeds with reasonable promptness; but if he acquiesces until the road has been constructed across his land and has become a part of the railroad line, in which the public

has acquired an interest, his only remedy is through a proceeding for assessment of damages. *Bravard* v. *Railroad Co., supra.*

In the case before us, plaintiffs permitted the erection of a high embankment and railroad tracks as part of a system of viaducts. The construction was undertaken and completed at enormous cost. The Grand Trunk Western Railroad Company, the State of Michigan, and the city of Royal Oak assumed that it was rightfully done by virtue of vacation proceedings. The construction was directly in front of plaintiffs' property. No question or objection was made by them as to the right or propriety of the construction until five years·after it had been completed and in use. Plaintiffs have lost any rights to the equitable remedy of an injunction by their laches.

While neither estoppel nor laches were pleaded as a defense, nevertheless courts of equity withhold relief from those who have delayed the assertion of their claims for an unreasonable time; and this doctrine may be applied in the discretion of the court even though the laches are not pleaded or the bill demurred to. *Willard* v. *Wood,* 164 U. S. 502 (17 Sup. Ct. 176); *Sullivan* v. *Railroad Co., supra; Landsdale* v. *Smith,* 106 U. S. 391, 394 (1 Sup. Ct. 350); *Badger* v. *Badger,* 2 Wall. (69 U. S.) 87, 95; *Syester* v. *Brewer,* 27 Md. 288, 319; *Williams* v. *Rhodes,* 81 Ill. 571.

The decree dismissing plaintiffs' bill of complaint is affirmed, with costs to defendants.

BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred. WIEST, C. J., concurred in the result. BUTZEL, J., took no part in this decision.