HENDERSON *v.* CONNOLLY'S ESTATE.

1. ATTORNEY AND CLIENT—ACCOUNTING BY LAW PARTNERSHIP—LIMITATION OF PROOFS.

In suit for accounting between law partners, proofs were properly limited to period commencing with advent of new partnership agreement, entered into after parties had been practicing under a previous agreement, until plaintiff abandoned the partnership, notwithstanding fact that remaining partner continued to maintain the office theretofore occupied by the firm, used the firm stationery until the supply on hand was exhausted, and for some time after plaintiff's abandonment made use of the firm name to a limited extent.

2. SAME—ACCOUNTING—BUSINESS AFFAIRS OF LAW PARTNER—EVIDENCE.

In suit for accounting of a law partnership in which plaintiff claimed that partner, now deceased, had rendered valuable services to a corporation as director, general counsel, attorney and treasurer without accounting to partnership therefor, evidence that although deceased had spent much time and attention to the affairs of the corporation in whose stock he had made a large investment, there is no testimony he had ever received any specific payments or emoluments for professional services rendered to it as a lawyer, distinct and apart from services rendered as an officer, and legal services were rendered by a firm with which he was in no way connected.

3. SAME—ACCOUNTING—BUSINESS SERVICE BY LAW PARTNER TO CORPORATION.

In suit for accounting of a law partnership in which plaintiff claimed a percentage of value of services rendered by his partner, now deceased, to corporation in which he was financially interested, evidence *held,* to require finding that deceased

---

*Continued from Vol. 293.

That incompleted negotiations do not result in a contract, see 1 Restatement, Contracts, § 25.

Interpretation of contracts as affected by conduct of the parties, see 1 Restatement, Contracts, § 235(e).

did not agree to share with plaintiff the value of such services during his lifetime, hence incomplete negotiations relative to settlement between the partners cannot be made the basis of an accounting suit against the deceased partner's estate.

4. ACCOUNTING—LAW PARTNERSHIP.

In suit for accounting by a law partnership, any accounting by a partner must pertain to the practice of the law.

5. PARTNERSHIP—FAILURE IN DUTY—DISSOLUTION—ACCOUNTING.

Failure in duty as a partner may be a ground for dissolving the partnership, but not for a claim by diligent partners for compensation.

6. ATTORNEY AND CLIENT—ACCOUNTING—LAW PARTNERSHIP—EVIDENCE—SERVICES FOR CORPORATION.

In suit for accounting by law partnership in which plaintiff claimed that partner, now deceased, failed to account for valuable services rendered to corporation in which he was financially interested, plaintiff failed to establish right to accounting for legal services rendered such corporation or for any sums which deceased should have charged to and should have received from it for such services or that income received from such corporation was in any way an evasive or indirect method of compensating him for services rendered which were within the scope of the business of the law partnership.

7. SAME—LOSS OF SERVICES—SPECULATIVE DAMAGES.

In suit for accounting by law partnership in which plaintiff claimed deceased partner who had agreed to devote his full time to the business of the firm had given benefit of his time and ability to corporation in which he was financially interested and failed to account for the value thereof upon plaintiff's demand, plaintiff would not be entitled to what the partner might or did obtain in other lines of activities but only what the value of the partner's lost services were worth to the firm, and where it appears that the value of such lost services is speculative, no recovery therefor may be had.

8. SAME—ACCOUNTING—LACHES—DEATH OF PARTNER—WITNESSES.

Law partner who delayed bringing suit for accounting by his partner, now deceased, for value of latter's services to firm which were lost to it because of time and ability devoted to corporation in which latter was interested, for a period as much as 10 years before partner's death, held, guilty of laches where not only partner has died but two other persons who had intimate knowledge of pertinent matters had also died.

9. EQUITY—LACHES.

In a large measure the question as to whether relief should be withheld on the ground of laches must depend upon the facts and circumstances of the particular case but nothing can call forth equity court into activity but conscience, good faith and reasonable diligence, so where these are wanting the court is passive and does nothing.

10. SAME—LACHES—LIMITATION OF ACTION.

The rule that equity aids the vigilant, and not those who slumber on their rights, is designed to promote diligence on the part of suitors, to discourage laches by making it a bar to relief, and to prevent the enforcement of stale demands of all kinds, wholly independent of the statutory periods of limitation.

11. EVIDENCE—ADMISSIONS.

Fact that deceased attorney's executrix and legatee reserved $25,000 as an "estimated settlement" of plaintiff's claim for accounting by law partnership, in making return for the Federal estate tax, and in adjusting the State inheritance tax *held,* of some evidentiary value as an admission but insufficient to overcome other facts and circumstances justifying decree for plaintiffs; the reservation being explicable as a proper precaution taken on behalf of those interested in the estate.

Appeal from Wayne; O'Neill (James E.), J., presiding. Submitted April 12, 1940. (Docket No. 130, Calendar No. 41,109.) Decided June 3, 1940.

Bill by Harry Henderson against the estate of William F. Connolly, deceased, Mary May Connolly, executrix of the estate of William F. Connolly, deceased, and Mary May Connolly, as sole legatee under the will of William F. Connolly, deceased, for an accounting of a law partnership and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Willard H. Bracklow,* for plaintiff.

*Beaumont, Smith & Harris (Percy J. Donovan,* of counsel), for defendants.

NORTH, J. This appeal is from a decree entered in the circuit court in chancery of Wayne county dismissing plaintiff's bill of complaint wherein he sought an accounting from defendants incident to a former partnership in the law firm of Connolly & Henderson. The theory upon which plaintiff asserts a right to an accounting and to some extent the factual background of the case are set forth in the bill of complaint from which we quote somewhat at length:

"That * * * on or about December 5, 1919, said William F. Connolly, deceased, and plaintiff became associated together as copartners in the practice of law, under the firm name of Connolly & Henderson; and entered into written articles of copartnership, which provided in substance that the said William F. Connolly, deceased, was to share 65 per cent., and plaintiff 35 per cent., of the profits of said law partnership. * * *

"That the partnership arrangement detailed in the preceding paragraph, continued until January 2, 1925, when said William F. Connolly, deceased, and plaintiff, entered into another agreement, by the terms of which each of the partners agreed to give his entire time, skill, business ability and attention to the carrying on of said law business; and each was to receive one-half of the net profits thereof, and in the same proportion to share the losses thereof. * * *

"That for some time previous to 1926, said William F. Connolly, deceased, had taken an active interest in the affairs of Briggs Manufacturing Company, a Michigan corporation, and said partnership had often been engaged in a professional capacity to attend the different affairs of said company, which was engaged principally in the manufacture of automobile bodies. * * *

"That *commencing* with the year 1926, the various affairs of the Briggs Manufacturing Company commanded more and more of the time of the partnership, and particularly the time of William F. Connolly, de-

ceased, until several large matters arose, which required that said William F. Connolly, deceased, give a great deal of time to the affairs of said Briggs Manufacturing Company.

"That said William F. Connolly, deceased, from the year 1925 until his death in 1935, was a director, general counsel, and the treasurer of said Briggs Manufacturing Company, and counselled, participated and had charge of many of the large and important business affairs and transactions of said Briggs Manufacturing Company involving large sums of money, and required great knowledge, experience and resourcefulness in bringing said transactions to a successful consummation; and all of which was of great value to the said Briggs Manufacturing Company. * * *

"That during the years 1926 to 1929, said William F. Connolly, deceased, devoted practically his exclusive time to the various affairs of the Briggs Manufacturing Company, but accounted for no fees or earnings from the Briggs Manufacturing Company, until May of 1929, when he made a partial accounting. * * *

"That because said William F. Connolly, deceased, was devoting almost his entire time to the affairs of Briggs Manufacturing Company, plaintiff, in the spring of 1929, decided to terminate the partnership, whereupon a series of letters and telegrams passed between said William F. Connolly, deceased, and plaintiff, by the import and terms of which said William F. Connolly, deceased, accepted an accounting as stated by the plaintiff, of the partnership affairs, without repudiating or in any manner denying plaintiff's claim to an interest in the earnings of said William F. Connolly, deceased, accepted an accounting (of) his services and earnings from the Briggs Manufacturing Company.

"That in September, 1929, after the deceased William F. Connolly returned (from a trip to Europe) to Detroit, he resumed his former practice of devoting his exclusive time to the affairs and business of Briggs Manufacturing Company.

"That in November, 1929, *no settlement having been made,* by William F. Connolly, deceased, of his earnings from the Briggs Manufacturing Company, and said William F. Connolly, deceased, continuing to absent himself from his office on the affairs of Briggs Manufacturing Company, plaintiff moved from said offices, taking the chairs, desk, a set of Michigan Reporter, and leaving in said office subsequently occupied by said William F. Connolly, deceased, exclusively until his death, the remainder of the partnership furniture, library and equipment.

"That subsequent to November, 1929, plaintiff discontinued the use of the firm name, and used plaintiff's name exclusively in the practice of law, although said deceased William F. Connolly continued use of the firm name of Connolly & Henderson until his death, or for many years subsequent to November of 1929, *when the partners ceased practicing law together in the same office.*

"That there was no accounting by said William F. Connolly for his earnings as director, general counsel, attorney and treasurer for the Briggs Manufacturing Company, other than for his so-called nominal earnings, which on its face purports to be in truth and in fact not his actual earnings. * * *

"That said William F. Connolly, deceased, in one form or another, received a salary greatly in excess of $50,000 per annum, for the years 1925 to 1929 inclusive, for which no accounting has been made to plaintiff, and to an accounting of which plaintiff is entitled. * * *

"That plaintiff has presented a claim against the estate of William F. Connolly, deceased, which claim was denied by the commissioners on claims, and which on appeal to the circuit court for the county of Wayne, was again denied without prejudice, et cetera, by the Honorable Arthur F. Webster, in a cause being circuit court law docket no. 195,941."

The relief sought is that there be decreed dissolution of the partnership and an accounting "of the

partnership dealings and transactions and of all moneys earned, received or disbursed by either and both of said partners." And further, the following specific prayer for relief is made:

"That the account stated by plaintiff in his letter dated May 28, 1929, to William F. Connolly, deceased, pursuant to the authorization given to plaintiff by said William F. Connolly, deceased, in his letter to plaintiff of May 7, 1929, *be decreed to be an accounting of said partnership.*"

By their answer defendants have denied the material facts alleged by plaintiff and upon which he asserts a right to an accounting; and further, defendants affirmatively assert that plaintiff's alleged right to relief is barred by laches and the statute of limitations.

One of appellant's contentions is that the trial court was in error in limiting proofs to the period between 1925 and 1929. In his brief appellant states:

"This partnership began on December 2, 1919, as Connolly & Henderson and it continued publicly under that firm name and style until long after the removal of appellant from the offices of the firm in November of 1929."

We are unable to accede to the correctness of appellant's contention. Not only because of the specific allegations contained in plaintiff's bill of complaint, but also because of the testimony taken, we think it conclusively appears that there is no possible ground, under the facts in this case, upon which plaintiff could be held entitled to an accounting of the partnership affairs prior to 1925 or subsequent to the time when plaintiff abandoned the partnership place of business and thereafter "discontinued the use of the firm name and used plaintiff's name exclusively in the practice of law" as alleged in his bill of complaint.

There are no allegations in the bill of complaint on the basis of which plaintiff could assert a right to an accounting prior to 1925; and under plaintiff's allegations in the bill of complaint as well as the testimony given it conclusively appears that these former partners by mutual consent, or at least by a course of conduct in which each acquiesced, terminated, as between themselves, their partnership relation in November, 1929, and hence plaintiff could not be entitled to an accounting concerning firm transactions subsequent to the last-noted date. Just disposition of the instant case requires consideration only of plaintiff's alleged right to an accounting for the period from 1925 to 1929. In so concluding we are mindful, as pointed out by appellant, that Judge Connolly continued to maintain the law office theretofore occupied by the partnership, that he continued to use the firm stationery until the supply on hand was exhausted, and that for some time after November, 1929, Judge Connolly to a limited extent made use of the firm name of Connolly & Henderson.

There is little, if any, conflict in the testimony in this case in so far as it relates to plaintiff's contention that subsequent to January 2, 1925, Honorable William F. Connolly, formerly a judge of the recorder's court of Detroit, devoted much of his time and attention to the affairs of the Briggs company and gave to it in a large measure the benefit of his business judgment and counsel. Prior to 1925 he had acquired large holdings in the Briggs company's stock and subsequently he made substantial investments in its stock and in the stock of subsidiary companies. From these investments he received very large incomes in the way of dividends and profited by opportunities to make advantageous stock investments. But there is no testimony from which it can be ascertained that Judge Connolly received any specific payments or

emoluments for professional services rendered to the corporation as a lawyer, distinct and apart from his services rendered as a corporate officer. In fact it conclusively appears from the record that throughout a period beginning prior to 1925 and until after 1929 the Briggs company continuously retained as its general counsel a firm of Detroit attorneys with which Judge Connolly was in no way associated and that the legal services required by the Briggs company were rendered by such general counsel.

The partnership agreement entered into between plaintiff and Judge Connolly in 1919 contained the provision that "each * * * agrees with the other to give his time and best efforts to the work of said firm;" and in the agreement entered into by the partners January 2, 1925, it was specified "said partners severally agree * * * to give their full time and attention" to the firm's business. The theory upon which plaintiff asserts a right to recover is of a dual character. First, as above noted in the quoted portion of plaintiff's prayer for relief, he asserts a right to an accounting based upon the letters of May 7 and May 28, 1929, which passed between the parties; and second, plaintiff asserts a right to an accounting arising out of the partnership relation without primarily relying upon the correspondence which passed between the parties in May and June of 1929. As to this latter aspect, plaintiff's theory is outlined in his brief as follows:

"That neither partner could give his services away, without the consent of his partner, and if he did, he was in duty bound *to account for the value thereof* upon demand by his partner. * * * If W. F. Connolly used the possession which he had that belonged to Connolly & Henderson in the service of the Briggs Manfg. Co. or W. O. Briggs, to-wit, his time, labor, ability, skill, knowledge, experience and good

will, and did not make any charge therefor then appellant says under the ruling in the *Pierce Case* (*Pierce* v. *Pierce,* 89 Mich. 233) that W. F. Connolly must account for the value of what he did irrespective of the wording of either partnership agreement.

"The personal services of William F. Connolly after the formation of the firm of Connolly & Henderson for the practice of law in 1919, as amended in 1925, were no longer his own and the elements of his contribution to the partnership heretofore listed belonged to the partnership firm of Connolly & Henderson; he could not render services gratuitously because the purpose of the partnership was to operate for profit."

As bearing upon plaintiff's assertion of a right to an accounting based upon the letters of May 7 and May 28, 1929, the following facts are pertinent. In his brief plaintiff states: "On May 1, 1929, plaintiff contemplated moving his law office to the Stott building and practicing alone. This coming to the attention of William F. Connolly on May 3, 1929, he wrote plaintiff." This letter to plaintiff reads:

"If you would consider remaining in present suite, I offer you this suggestion:
  "(1) I will pay all expenses of this office—100 per cent.
  "(2) You keep as your own all your personal earnings—100 per cent.
  "(3) We divide what I produce 50 per cent—50 per cent.
  "(4) You may date this arrangement back to Jan. 1, 1928."

To the above letter plaintiff replied on May 6th with the suggestion that: "We figure up and agree on the value of your services to the Briggs company for the last four years. * * * That we account on that basis."

On May 7th Judge Connolly replied:

"As to the accounting—I am entirely agreeable to your drawing up an accounting in any form and upon any basis you consider proper and fair, and will okay it as made by you, now in advance.  You may charge to me whatever, in your judgment, should be charged to me for my services as treasurer of Briggs."

In a letter replying to the above on May 8th plaintiff suggested a value of Judge Connolly's services as treasurer of the Briggs company at from $25,000 to $50,000 per year and concluded: "Please give me your idea." On May 15th Judge Connolly wrote plaintiff that a "memorandum of the nominal revenue I have received as treasurer" would be furnished plaintiff. Following this and on May 28th, 1929, plaintiff wrote Judge Connolly as follows:

"Dear Judge: Have been awaiting your figures since your note of the 15th.  I suggest that we take as a basis the difference between $50,000 as the high annual salary and $25,000 as a low, which figures,

"$37,500 x 4                $150,000.00
      ½                        75,000.00
"Less my indebted to you       9,347.79
                                           $65,692.21

"That I pay
     ½ rent        $147.25
     ½ steno        100.00
       other         52.75
                   $300.00 per month"

June 3d Judge Connolly again wrote plaintiff and inclosed a check for $300 "to cover my share office expense" and added: "Haskins & Sells (Briggs' auditors) are getting me data on revenue from Briggs and will pass same along to you as soon as received." To the above and as of the same date plaintiff replied: "Dear Judge: Re your check to cash for ofs. expense for $300 herewith re enclosed to you. If you don't

mind I would rather that we have our accounting agreed upon first.'' On July 12th, the partners met at their office and Judge Connolly gave plaintiff the statement from the Briggs company showing the compensation paid to Judge Connolly as treasurer of the corporation for four years, 1926–1929, totalling $14,700. Plaintiff was informed by Judge Connolly that he was about to leave on a trip to Europe and ''that when he got back, they would adjust the matter, get it settled up.'' Before departing Judge Connolly left at the office his check for $2,000, later deposited in the firm's bank account, to be used to defray office expenses during his absence. Nothing further of any definite character developed between these parties as a result of their negotiations relative to an accounting. After Judge Connolly returned from Europe in September, 1929, and apparently without knowledge on his part, plaintiff in November, 1929, moved out of the firm's offices, located in another office building, and thereafter carried on his private law practice with which Judge Connolly during the remaining five or six years of his life had no connection whatever, and during this period plaintiff made no demand on Judge Connolly for a settlement or an accounting. We find nothing in this record which would justify any other conclusion than that the above-noted negotiations for an accounting and continuance of the partnership did not result in a meeting of the minds of the partners, and it follows that such negotiations did not ''constitute an agreement for an accounting and a promise to pay for the value of services rendered by decedent to the Briggs Manufacturing Company,'' as appellant contends in his brief. The incompleted negotiations between these partners cannot be made the basis of an accounting against the estate of William F. Connolly, deceased.

But wholly apart from plaintiff's claim of a right to an accounting above considered, he asserts that in equity because of the partnership agreement between himself and Judge Connolly he is entitled to an accounting for whatever may have been received by Judge Connolly for services rendered to the Briggs company regardless of whether it was received directly as compensation or indirectly in the way of emoluments, bonuses or profits derived from investments in the corporation's activities, such as the organization of subsidiary companies. And further, that regardless of whether Judge Connolly actually received such compensation, still in equity defendants should be required to account to plaintiff for the value of the services rendered by Judge Connolly to the Briggs company.

The partnership between plaintiff and Judge Connolly was "for the general practice of the law," and it is elementary that any accounting contemplated by this suit must pertain to the practice of law. In a Kentucky case wherein the court held a partner liable to account for profits derived from a transaction within the scope of the partnership's business, it was said:

"We should not be understood as holding, that a partner must account to his co-partners for the profits of a venture outside the partnership and not of the character of business done by the partnership, although the partnership contract may require each partner, as in the instant case, to devote his entire time and attention and apply his utmost skill and ability to the partnership affairs. Where such obligation is upon a partner and he devotes his time and ability to a business in which he invests his own funds only, and which is other than the character of the partnership business, his partners cannot require an accounting of the profits, but their remedy is of an-

other character." *Chambers* v. *Johnston,* 180 Ky. 73, 86 (201 S. W. 488, 494).

In writing the court's opinion in one of our earlier cases involving a partnership accounting, Justice CAMPBELL said:

"When partners unite their fortunes, it can seldom be expected that each is as valuable to the firm as every other. And so long as the firm lasts no premium is given to the more useful members, and no deduction is made for incapacity or absence of any one. The venture is made to reach general results, and nothing more is contemplated. Failure in duty may be a cause of dissolution, but it is no ground of compensation to the diligent." *Godfrey* v. *White,* 43 Mich. 171, 182.

Our review of this record brings the conclusion that notwithstanding Judge Connolly enjoyed a large income from his investments in the Briggs corporate stock and in the subsidiary activities of the Briggs company it cannot be found on this record that such income or the compensation received as treasurer of the Briggs company was in any way an evasive or indirect method of compensating Judge Connolly for services rendered to the Briggs company which were within the scope of the business of the law firm of Connolly & Henderson. The record is convincing that the Briggs company did not look to Judge Connolly for the rendition of legal services nor, with some very minor exceptions, did Judge Connolly undertake to render to the corporation such services. A number of witnesses who had personal knowledge of the extent and character of Judge Connolly's relations with and activities in the affairs of the Briggs company testified; and from such testimony it clearly appears plaintiff's contention cannot be sustained that Judge Connolly in fact did render extensive legal services

to the Briggs company and was compensated therefor by indirect means. John H. French was one of the witnesses of this type. He was a director and officer of the Briggs company from 1923 to 1929. We quote a resume of a portion of his testimony as set forth by appellant in his brief:

"All legal bills came over my desk. I do not recall of ever seeing a bill from Judge Connolly. Judge Connolly had no office in the Briggs company. He was there infrequently. He might drop in at 4 or 5 o'clock in the afternoon probably once a week or every two weeks. He customarily went in to talk to Mr. Lark, the secretary of the company. * * *

"Judge Connolly's duties as treasurer of the company were most nominal. He attended the annual meeting and read the treasurer's report which had been prepared by the auditor and was handed to him to read in printed form. If I had to place a value upon Judge Connolly's services as treasurer I would not be able to agree with Mr. Maise at $25,000 a year. I would say he was merely nominal. I would say that Judge Connolly's salary was not on the same general scale with other officers."

Another witness, H. W. Griffith, who was secretary of the Briggs company in 1924, 1925 and 1926, and thereafter served as the vice-president and general manager of one of the associated companies, gave testimony bearing on this phase of the case. We quote from the resume of his testimony as set forth in appellant's brief:

"Between 1925–1929, to my knowledge Beaumont, Smith & Harris were attorneys for W. O. Briggs, Briggs Manufacturing Company and Briggs Commercial & Development Company. I never knew Judge Connolly to draw any contracts or resolutions, or any other legal documents between those years. While I was secretary of Briggs, I never took up legal matters with Judge Connolly."

While there is testimony in the record which is in conflict with the foregoing and other like testimony as to the character, extent and value of Judge Connolly's services to the Briggs company, still the conclusion is quite unescapable that whatever profits Judge Connolly received through the Briggs company, with the exception of his compensation as treasurer, were the direct result of his extensive investments in the Briggs company and in its subsidiaries; and like the trial judge, we are of the opinion that plaintiff "failed to prove that Judge Connolly received any money from the Briggs company in behalf of the law firm which he did not account for." And even if it were to be found that in some limited way Judge Connolly did render services which were of such a character that he should have been compensated therefor as an attorney and should have accounted to the partnership, certainly fair compensation for such services would total much less than the $9,347.79 and other items of plaintiff's admitted indebtedness to Judge Connolly. Plaintiff has not established a right to an accounting for any moneys received by Judge Connolly from the Briggs company for legal services nor a right to an accounting for any sums of money which Judge Connolly should have charged to and should have received from the Briggs company for the rendition of such services.

In so far as plaintiff claims an equitable right to an accounting on the theory that instead of Judge Connolly devoting his time to the law business of the partnership he gave to the Briggs company the benefit of his time and ability, plaintiff's contention is thus succinctly stated in his brief: "That neither partner could give his services away, without the consent of his partner, and if he did, he was in duty bound to account for the value thereof upon demand by his partner." See 47 C. J. p. 1253; 20 R. C. L. p.

876.  This theory, we think, will not support recovery under the facts of this case.  At most Judge Connolly's course of conduct, of which plaintiff complains, was no more than a breach of the partners' agreement ''to give their full time and attention'' to the law business of the partnership.  For that the accounting, if it could be called such, to which plaintiff would be entitled would be the value of Judge Connolly's services which were lost to the partnership, not what he might have obtained or did obtain in other lines of activities, especially if such income or benefit was obtained by Judge Connolly through investments of his own money instead of activities in the practice of law.

In this connection it is interesting to note that during the period from 1925 to 1928 inclusive it is disclosed by the partnership books that the law business ''produced by W. F. Connolly'' totalled $56,300.47, and that ''produced by Henderson'' amounted to $47,683.48.  How much more law business Judge Connolly could have produced or would have produced for the partnership if he had devoted his ''full time and attention'' to the firm's business does not appear. Hence to attempt an accounting on that basis would, on this record, be mere speculation.

Another question, upon which we think there is no occasion to pass, necessarily suggests itself.  If it were to be assumed, as plaintiff contends, that Judge Connolly rendered legal services to the Briggs company for which he received no compensation, would not the remedy of the partnership of Connolly & Henderson be by suit against the Briggs company for the value of such services; rather than for plaintiff in this proceeding to demand an accounting from the Connolly estate for the value of such legal services rendered to the Briggs company by Judge Connolly but for which he received no compensation?

As bearing upon defendants' contention that plaintiff is not entitled to recover in this proceeding because of laches the following is pertinent. Certainly throughout the years for which plaintiff seeks an accounting he was well aware of the extent to which Judge Connolly was devoting or failing to devote his time and ability to the business of the partnership, but notwithstanding this plaintiff acquiesced by continuing the partnership relation. Since, as we find upon this record, Judge Connolly did not directly or indirectly receive from the Briggs company compensation for rendering legal services, which was the business of the partnership, it would be in violation of the equitable rule requiring diligence to decree at this late date an accounting by the estate of the deceased partner "for the value of the services rendered to the Briggs Manufacturing Company" notwithstanding neither the deceased partner nor his estate received compensation for such alleged services. Such an accounting would go back more than 10 years prior to Judge Connolly's death and more than 11 years prior to the time plaintiff brought this suit; and this too without demand for an accounting during all that period, except the unsuccessful attempt at an adjustment made by the partners in the summer of 1929.

It is by no means a far-fetched assumption that had plaintiff's present suit been prosecuted during the lifetime of Judge Connolly he could and would have given material testimony not available since his demise. If an amicable adjustment could not have been effected by the partners upon a timely presentation of plaintiff's present claim, the partnership relationship could have been terminated by Judge Connolly even prior to 1929. And further, as pointed out by defendants, before this suit was brought two other persons had died who possessed intimate knowledge

of pertinent matters. No credible excuse or explanation is offered for plaintiff's delay. Under this record plaintiff's right to an accounting should be held to be barred by unexcused laches.

"In a large measure the question as to whether relief should be withheld on the ground of laches must depend upon the facts and circumstances of the particular case." *Upell* v. *Bergman,* 246 Mich. 82, 89; but from earliest times in this jurisdiction equity has sustained and adhered to the following: "Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting the court is passive, and does nothing." *Campau* v. *Chene,* 1 Mich. 400, 405.

"The rule that 'equity aids the vigilant, and not those who slumber on their rights,' is designed to promote diligence on the part of suitors; to discourage laches, by making it a bar to relief; and to prevent the enforcement of stale demands of all kinds, wholly independent of the statutory periods of limitation." *Douglass* v. *Douglass* (syllabus), 72 Mich. 86.

While in the two cases just above cited the periods of inaction were much greater than in the instant case, the defense of laches has been upheld in more recent decisions of this Court notwithstanding the time of inaction was of shorter duration. See *Ingles* v. *Bryant,* 117 Mich. 113; *Pittsburgh & Lake Angeline Iron Co.* v. *Lake Superior Iron Co.,* 118 Mich. 109, affirmed 178 U. S. 270 (20 Sup. Ct. 931); and *Kipp* v. *State Highway Com'r,* 286 Mich. 202.

"Peace and good order require that equity shall not aid those who grossly neglect to take care of their own rights." *Zoellner* v. *Zoellner* (syllabus), 46 Mich. 511.

In arriving at our conclusion we are mindful of the stress which plaintiff places upon the fact that

defendants in making return for the Federal estate tax and also in adjusting the State inheritance tax made a reservation in the amount of $25,000 as an "estimated settlement" of plaintiff's claim involved in this suit. And this, plaintiff asserts, constitutes an admission of liability on the part of defendants. While the noted circumstance is of some evidentiary value, it is not sufficient, in view of the other facts and circumstances disclosed by the record, to justify decreeing to plaintiff the accounting which he seeks. Rather, we think, the reservation of $25,000 as an estimated settlement of plaintiff's claim was no more than a proper precaution taken in behalf of defendants.

The decree entered in the circuit court is affirmed, with costs to appellees.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.