160

### LUCKING et al. v. SCHRAM.
### No. 8661.

Circuit Court of Appeals, Sixth Circuit.
Jan. 9, 1941.

an insolvent national bank, to enforce liability for an assessment levied upon the shareholders under Title 12, § 66, U.S.C., 12 U.S.C.A. § 66. Appellants counterclaimed, praying for rescission and equitable relief. The counterclaim sets forth that appellants, administrators of the estate of Alfred Lucking, through an exchange of twenty shares of stock of the Detroit & Security Trust Company, on February 7, 1930, acquired two hundred shares of stock of Detroit Bankers Company (hereinafter called the holding company), and prays that this exchange be rescinded. The District Court dismissed the counterclaim and gave judgment against appellants for their proportionate share of the assessment.

The questions arising out of the receiver's petition are identical with those covered by the decision of this court in Barbour v. Thomas, 86 F.2d 510, a class suit, which held that stockholders of the holding company are liable for assessments made upon the stock of its constituent banks. Appellants, as stockholders of the holding company, are therefore liable for assessments on behalf of First National Bank-Detroit. Davis v. Schram, 6 Cir., 111 F.2d 144; Wolf v. Schram, 6 Cir., 111 F.2d 146; MacPherson v. Schram, 5 Cir., 112 F.2d 674, 675. It is unnecessary to discuss appellants' liability further, as all such material questions were decided in Barbour v. Thomas and in the companion case of Ullrich v. Thomas, 6 Cir., 86 F.2d 678.

The principal questions are those arising out of the counterclaim for rescission. Appellants prayed for rescission and the return of the original stock, upon the ground that they made a mistake of law when they exchanged the shares in Detroit & Security Trust Company for shares in the holding company. They state that they expected to receive shares in a company which would actually own the shares in the individual banks taken over by the holding company, and not until the decision of the District Court in Barbour v. Thomas, 7 F.Supp. 271, announced in 1933, were they apprised that the holders of the holding company stock were subject to the assessment for shares of the individual banks acquired by the holding company in 1929 and 1930. Clearly these allegations do not entitle appellants to succeed in their prayer for rescission. Under Michigan law, controlling here, this relief cannot be granted upon the ground of mere mistake of law. Martin v. Hamlin, 18 Mich. 354, 100 Am.Dec. 181;

Wm. Alfred Lucking, of Detroit, Mich. (Lucking, Van Auken & Sprague, of Detroit, Mich., on the brief), for appellants.

Roy G. Holmes, of Detroit, Mich. (Robert S. Marx, Carl Runge, and Roy G. Holmes, all of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of an action by the receiver of First National Bank-Detroit,

Lapp v. Lapp, 43 Mich. 287, 5 N.W. 317; Ingles v. Bryant, 117 Mich. 113, 75 N.W. 442; Pittsburgh etc. Iron Co. v. Lake Superior Iron Co., 118 Mich. 109, 76 N.W. 395. In the latter case both parties, in making the contract, relied upon a former decision of the Supreme Court of Michigan. This decision was later overruled by that court, and rescission of the contract was sought upon the ground of mistake of law. The court held that as the case contained no elements of misrepresentation, imposition, suppression, undue influence, imbecility, or surprise, it did not fall within any exception to the rule that in such case a mistake of law does not furnish any ground for relief.

■ The District Court held that appellants had not exerted due diligence in the assertion of their claimed right of rescission. With this conclusion we agree. Appellants are attorneys, who had read and considered the legal effect of the agreement for the exchange of shares of the Detroit & Security Trust Company for shares of the holding company. It provided:

"The Common stock issued by said corporation [the holding company] shall be subject to the same liability as shares of the capital stock of a bank and/or trust company organized in Michigan, and/or shares of capital stock of a national bank."

This provision of the contract was carried out by being incorporated in the articles of association, Art. IX(A), which reads as follows:

·"The holder of each share of common stock of this corporation shall be individually and severally liable for such stockholders' ratable and proportionate part (determined on the basis of their respective stock holdings of the total issued and outstanding stock of this corporation) for any statutory liability imposed upon this corporation by reason of its ownership of shares of the capital stock of any bank or trust company, and the stockholders of this company, by the acceptance of their certificates of stock in this company, severally agree, that such liability may be enforced in the same manner and to the same extent as statutory liability may now or hereafter be enforceable against stockholders of banks or trust companies under the laws under which said banks or trust companies are organized to operate. A list of the stockholders of this company shall be filed with the banking commissioner and the Comptroller of the Currency whenever requested by either of those officers."

■■ The clause was also printed on the reverse side of each stock certificate issued by the holding company. The assent of the stockholders to this provision was manifested by the acceptance of the stock. Barbour v. Thomas, supra, 86 F.2d at page 517; Backus v. Connolly, 268 Mich. 495, 256 N. W. 496. In 1933 appellants were aware that the receiver would enforce this liability, and one of them took an active part in the prosecution of the Ullrich Case, supra. Having received dividends of $1,600 on the holding company stock, appellants stood by for six years after the District Court's decision in Barbour v. Thomas, supra, and failed to repudiate the contract of exchange until they filed their counterclaim in December, 1939. Now they seek equitable relief; but equity aids the vigilant, and not those who slumber on their rights. Mogk v. Stroecker, 243 Mich. 668, 220 N.W. 730; Hope v. Detroit Trust Co., 275 Mich. 213, 266 N.W. 326; Kipp v. State Highway Commissioner, 286 Mich. 202, 281 N.W. 592; Henderson v. Connolly's Estate, 294 Mich. 1, 292 N.W. 543.

■ Also the situation of the parties had changed during the period of this transaction. Some three years had elapsed between the exchange of the stock and the date of the bank's insolvency, and the rights of third parties had intervened. The stockholders, creditors, and depositors of the constituent banks of the holding company had changed their position in reliance upon the agreement. Undoubtedly the First National Bank-Detroit, carrying on active business during this time, had incurred new obligations, and under Art. IX(A) of the agreement made in the exchange of the stock, new creditors had a right to rely upon the statutory liability of the appellants for assessment upon the stock of the constituent banks. Hence the equities preponderate in favor of the receiver. Thompson v. American State Bank, 256 Mich. 245, 239 N.W. 373. Under the circumstances the delay was unreasonable. This ruling rests upon "the long-established doctrine of courts of equity that their extraordinary relief will not be accorded to one who delays the assertion of his claim for an unreasonable length of time, especially where the delay has led to a change of conditions that would render it unjust to disturb them at his instance." Hays v. Port of Seattle, 251 U.S. 233, 239, 40 S.Ct. 125, 127, 64 L.Ed. 243.

In conclusion, we note that appellants received exactly what they bargained for, and suffered no financial damage. At the

time of the exchange the total value of the stock acquired was equal to that of the stock surrendered, and up to April, 1930, the holding company stock sold at a considerable advance in market price. After all, the underlying reason for this controversy is that appellants, when sued for their proportionate share of the stock assessment, and not before, decided to repudiate the agreement. But rescission cannot be granted merely because one of the parties is disappointed in the results of a contract.

The judgment and decree are affirmed.