CAMPAU *v.* VAN DYKE.

There was no error in the judgment, and it must be affirmed, with costs.

The other Justices concurred.

---

## John J. Campau v. Elizabeth Van Dyke, executrix, et al.

15  371
110  296
15  371
121  310
15  371
f123  384
15  371
124  636
15  371
141  ¹148

*Decree, when may be impeached for fraud: Laches.* Where a decree establishing title to real estate is sought to be impeached by bill in chancery, as having been obtained by fraud and collusion, the bill must be brought within a reasonable time, having reference to the nature and all the circumstances of the particular case.

The decree sought to be set aside, was obtained some seven months before complainant arrived at the age of majority. He was aware of the decree and its effect, and all the material facts of the case, when he attained his majority. He delayed six years and a half after that period before bringing his bill. In the meantime, the principal party charged with the fraud, and the guardian charged with collusion, as well as the principal witnesses, who, from the nature of the case, must have been best acquainted with the facts, had all died. *Held*, that he had not brought his bill within a reasonable time, and it was dismissed on this ground.

*Heard April 25th, 26th and 30th. Decided May 14th.*

Appeal in Chancery from Wayne Circuit.

The bill in this cause was filed to impeach and set aside a decree rendered by the Circuit Court for the county of Wayne, April 24th, 1854, in a cause wherein James A. Van Dyke — since deceased, and whose representatives are the principal defendants in this cause — was complainant, and the complainants in this cause were defendants.

The grounds upon which said decree was sought to be impeached are, that at the time it was rendered, complainant was an infant, and that no day in court, after he should become of age, was given him by said decree to show cause against it; and also that said decree was obtained by fraud and collusion.

The bill was dismissed in the court below, with costs.

The facts are stated in the opinion.

*C. I. Walker* and *A. Russell,* for complainant.

The lapse of time furnishes no bar to this bill.

No lapse of time short of twenty years would do so, even if there was no fraud or trust.

The object of the bill is to vindicate the complainant's title to real property; and in analogy to the statute of limitations, this can be done any time within twenty years. 2 *Comp. L.* § 5350; 2 *Story's Eq. Jur.* § 1520 – 1; 2 *Curtis Ch.* 205; 6 *T. B. Mon.* 609; 7 *How.* 258; *Id.* 829; 1 *Dana,* 378, 297.

But the analogy will not apply in case of trusts, for no length of time runs in favor of a trustee as against a *cestui que trust.* — 2 *Daniells, Ch. Pr.* 735, *N.* 1; 5 *Ohio, St.* 122; 2 *Jones Eq.* 430; 24 *Penn. St.* 482.

And one dealing with the trustee, with full notice of the trust, occupies the same position. — 10 *Rich. Eq.* 221; 23 *Geo.* 76.

*Newberry & Pond,* for defendants.

If the complainant could have ever questioned said decree on the ground of fraud and collusion, he has lost the right.

1.  By his laches.

Admitting that the decree was obtained by fraud and collusion, it was not void, but only voidable. And nothing is better settled than that a party who has a right to avoid a transaction for fraud, must make his election to do so, and act promptly. If he sleeps upon his right, the law construes it an election not to avail himself of the right. This decree was rendered October 20, 1854. Defendant became of age December, 1854. He filed this bill August 5, 1861, almost seven years after he became of age. He knew, if his own statement is to be believed, of the alleged corrupt bargain between Van Dyke and Meldrum very soon after the decree was rendered. We submit that he delayed too long.

2. By electing to take under the will mentioned in the stipulation.

It is clear that complainants claim to have the trust deed reinstated, and his claim as legatee, under said will, are wholly inconsistent.

The will was evidently made upon the basis that the testator had regained the control of his property by the decree, setting aside the trust deed; with that deed in existence, he had no property to dispose of by will.

CHRISTIANCY J.

On the 7th day of July, 1853, Antoine Beaubien, an old, uneducated and weak minded Frenchman without children, being the owner of a large landed estate in and near Detroit, the management of which he was compelled to entrust to an agent, executed a deed of trust, conveying the property to John T. Meldrum, then his confidential agent and manager of the property. This deed reserved to the grantor the possession of a small part of the property, and the income of most of it, during his life; but made full provision for the distribution of the property and its proceeds among several different persons, mostly his relatives, including his second wife, then living, and several of her children. The complainant who had been brought up in his family, and his sister, the wife of Meldrum, were second cousins of the grantor, and they were the principal beneficiaries under the deed. John T. Meldrum, however, was made a joint beneficiary with his wife.

On the 29th day of October, 1853, Beaubien, the grantor, having, for some reason, become dissatisfied with this arrangement of his property, filed his bill in chancery against Meldrum and the counsel who had drawn up and superintended the execution of the trust deed, alleging that he had been imposed upon, and fraudulently induced by them to execute the deed, under the belief, on his part, that the same was a last will and testament, and praying that it might be set aside.

While this bill was pending, and after the answer of the defendants therein had been filed, on the 4th day of February, 1854, Beaubien sold and conveyed to James A. Van Dyke, by warranty deed, the lands previously conveyed by the trust deed to Meldrum. And on the 7th day of March, 1854, Beaubien's bill was discontinued and the files withdrawn; and on the same day Van Dyke filed his bill in the Circuit Court for the county of Wayne in chancery against Meldrum, the trustee, and all the beneficiaries mentioned in the deed; setting forth his purchase of the property, alleging that said Beaubien had, notwithstanding the trust deed, remained in possession—that the trust deed was executed by Beaubien under the misapprehension that it was a will, he being unable to speak the English language and understanding it very imperfectly, uneducated, of weak mind and incapable of comprehending the legal effect of such an instrument; but making no charge of fraud against any one in the procurement of its execution—praying that the trust deed may be set aside and cancelled, and the trustee decreed to release and convey to complainant Van Dyke.

Several of the defendants in Van Dyke's suit were minors, and, among others, the present complainant; and Jeremiah Van Rensselaer, a solicitor of the court, was, on motion of Van Dyke, on the 21st day of March appointed guardian *ad litem* to the present complainant and the other infant defendants; the petition for that purpose being in the hand-writing of the present complainant. On the 23d day of March Van Rensselaer filed an answer for all the infant defendants in the usual form, submitting their rights to the protection of the court. He also, on the same day, filed the answer for Meldrum and wife as their solicitor, admitting most of the allegations of the bill, neither admitting nor denying the allegation that the trust deed was executed by Beaubien under the belief that it was a will, but declaring his belief that Beaubien had executed it with

the full understanding that it was a deed of trust. Both Meldrum and his wife, however, declaring that they have no desire or wish to hold said property or the benefits conferred by said deed in opposition to the wishes of Beaubien; and declaring that they offer no resistance to the prayer of Van Dyke's bill, aside from a simple narration of the facts set forth in the answer, and submit to such decree or order in the premises as the court may deem just and proper.

On the 18th day of April testimony on the part of Van Dyke purports to have been taken, Van Rensselaer, as solicitor and guardian, assenting: no replication having been then or afterwards filed. The witnesses were not cross-examined, and no testimony was taken on the part of the defendants. On the 20th of April, 1854, a decree was taken granting the relief prayed for, setting aside the deed of trust, and directing Meldrum to release and convey to Van Dyke. This decree was approved by the judge on the 24th of April, and directed to be entered.

Van Dyke, having previously taken possession under his deed from Beaubien, continued in possession, and proceeded to make sales of a considerable portion of the property, until his death, which happened on the 7th of May, 1855; having made a will, his executors and devisees have since continued in the possession and control of the property.

On the 11th day of December, 1854, about seven months and a half after the entry of the decree, the present complainant attained the age of majority. Complainant's bill in the present case was filed on the 5th day of August, 1861, against Meldrum and the executors, devisees and heirs of Van Dyke. This bill sets up and insists upon the validity of the trust deed from Beaubien to Meldrum, and complainant's rights under it, as one of the cestuis que trust— alleges that the decree in the Van Dyke suit was obtained by a corrupt and fraudulent agreement between Van Dyke, and Meldrum, the trustee, by which the latter received

some twenty thousand dollars in property and otherwise, on the understanding and agreement that no real or effectual defense should be made by him, and that no real defense was made—that Van Dyke controlled all the proceedings in the cause, as well on the part of defendants as his own—that Van Rensselaer, who appeared as solicitor for Meldrum and wife and as guardian for the present complainant and other infant defendants, was employed and paid by Van Dyke, to put in sham answers and defenses which were prepared by Van Dyke himself or under his direction; and that all the acts of Van Rensselaer, as such solicitor and guardian, were in the interest of Van Dyke, collusive and fraudulent—that no real defense was made or intended to be made—that Van Dyke, for the purpose of securing an influence over complainant, about the same day that he procured his deed from Beaubien, employed complainant to come into his law office as a clerk—that complainant was ignorant of the nature of the trust deed and the benefits thereby provided for himself, and was by Van Dyke induced to believe that he, Van Dyke, was acting as a friend both to complainant and Beaubien, and to get the latter out of his trouble—that by these and like plausible statements Van Dyke induced complainant to sign a paper which he did not then know, but has since learned, was a petition on the part of complainant for the appointment of a guardian *ad litem*, that complainant, upon enquiries instituted at the time of Van Dyke's death, ascertained for the first time the existence of the decree and its effect, that, till then, he had no actual notice or knowledge of said decree or of the provision made for himself in the trust deed.

The bill prays that the decree may be set aside, as obtained by fraud and collusion, and declared void; that said trust deed may be established, the trusts revested, and Meldrum decreed to execute and carry them into effect,

CAMPAU v. VAN DYKE.

that complainant be let into possession, and that an account may be taken of the sales, receipts, rents and profits, etc.

The answer of Van Dyke's executors and the only one of his children then of age, denies all the material allegations of the bill, as to the validity of the trust deed, or any fraud or collusion in obtaining the decree, and insists that, if the complainant ever had any right to impeach said proceedings, he has lost the same by his laches; and they claim the same benefit of this objection as if they had demurred to the bill. Meldrum also denies all fraud or collusion on his part in that suit.

Evidence was taken only on the part of the complainant. The case was heard in the court below upon pleadings and proofs, and the bill dismissed. The evidence taken is directed mainly to sustain the validity of the trust deed, and to prove the charge of fraud and collusion in the conduct of the suit in which it was set aside.

But the first question which the statement of the case naturally presents to the judicial mind, is that of the laches of the complainant. Why — if the decree affecting his rights was obtained by the gross fraud and collusion alleged — has he delayed so long in seeking redress?

We do not mean to say that there is any fixed period, short of twenty years (or such other period as may have been adopted by courts of equity in analogy to the appropriate statute of limitation which may be in force), which would of itself operate as a peremptory legal bar to such a bill, if the facts and circumstances sufficiently account for and excuse the delay, and render it probable that the parties claiming the benefit of the decree could have lost nothing in consequence of the delay, and will not be deprived of any of the means for sustaining it, which they would have possessed had it been attacked at an earlier period.

15 Mich. — z.

But sound public policy and a just regard for the stability of private rights, require that the solemn judgments and decrees of courts affecting the rights of property shall not be lightly disturbed, nor, without the strongest reason, allowed to be impeached after any considerable period of time, during which the parties have been allowed to rely upon them, and others may have obtained interests on the faith of them, or the evidence by which they might have been sustained has been lost. And if a party to such judgment or decree might, after any considerable period, impeach its validity without showing a proper excuse or reasonable justification for the delay; and especially when it appears probable that material evidence to sustain it may, in the meantime, have been lost, a general feeling of insecurity and distrust, very injurious to property and business, must naturally result.

For these reasons, we think, in a case like the present, a party seeking to set aside the decree must satisfy the court that he has not slept upon his rights, and that his delay for any period after he was aware of his rights, and competent to prosecute them, has not operated to the prejudice of the other parties, nor deprived them of any of the evidence or other means for sustaining the decree, which they might have possessed had he brought his bill at as early a period as he might. In other words, we think the only just rule which can be laid down upon this point is, that such a bill must be brought within *a reasonable time;* having reference to the *nature* and *all the circumstances of the particular case.*

Such is the rule where a party seeks to repudiate or set aside a contract obtained by the fraud of the opposite party. — *Disbrow v. Jones et al., Harrington's Ch. R.* 102 (where a few month's delay was held unreasonable); *Carroll v. Rice, Walker's Ch. R.* 373, 379, 380 (where two years was held unreasonable). He must show himself

prompt and eager for redress, and any delay must be accounted for and excused.

We think the reasons for requiring promptness are equally as strong where a party seeks to impeach a judgment or decree. There is a strong analogy between the two classes of cases. If this decree was obtained by fraud, as alleged, it was not for that reason necessarily or absolutely void, as to complainant, any more than a contract into which he might have been induced to enter by the fraud of the other party. The contract is only void at his option. If he acquiesces for an unreasonable time, he will be bound. If he seeks to repudiate it, he must do so at the first opportunity, or account for and excuse the delay; in other words, he must seek his remedy in a reasonable time. — *See* 2 *Parsons on Cont.* 278, 279, *and cases cited*, and we see no sound reason why the same rule should not apply where he seeks to set aside a decree, which he had the option to affirm by his acquiescence, or to repudiate and impeach by the institution of a suit.

The same rule of diligence and reasonable time applies when property is sold by a trustee, and purchased by or for him on his private account; the purchase is void at the option of the *cestui que trust*, but he will be held to affirm it by acquiescence for an unreasonable length of time; and three years has been held unreasonable. — *Jennison v. Hapgood*, 7 *Pick.* 1. See, also, *Davis v. Cotten*, 2 *Jones Eq. R.* 430; *Monroe v. Delavan*, 26 *Barb.* 16.

Has the complainant used due diligence, and sought his redress within a reasonable time? We are satisfied, from the evidence, that prior to the institution of the Van Dyke suit, complainant was fully aware of the provision made for his benefit by the deed of trust; that during the pendency of that suit, he was aware at least of its general nature and object; that he knew of and assented to the appointment of Van Rensselaer as his guardian. The proceedings in that suit were had in March and April,

1854, and the complainant attained his majority on the 11th of December, in the same year. No laches can be imputed to him during his minority. But on attaining his majority, it can not be supposed that the notice or knowledge he had immediately preceding that event, was at once forgotten. He admits in his bill that at the time of Van Dyke's death, he became aware of the provisions made for him in the trust deed, and obtained actual notice and knowledge of the decree and its effect. It is also evident from his own testimony, and that of Meldrum, that he was then aware of all the material circumstances upon which he now relies to establish fraud and collusion.

By his own testimony, he undertakes to excuse his delay during Van Dyke's lifetime by some vague verbal assurances of Van Dyke, to do right by him; but as this, if true, must have been equally within the knowledge of Van Dyke, this testimony is wholly inadmissible under the statute of 1861. — *Sess. Laws, p.* 169, *Comp. L.* § 4341. Van Dyke died May 7th, 1855, six years and nearly three months before this bill is filed, and there is nothing to show that he received any encouragement or recognition of his claims from the executors or devisees. During the whole of this period, there is no pretense that he was not as well aware of all the facts and circumstances of the case as he has been at any time since, or as he is to-day, and we think, from the weight of the evidence, he was aware of all the material facts from the time he attained his majority; yet, he not only keeps silent until the death of Van Dyke, but delays to bring his bill until Beaubien and Van Rensselaer are both in their graves.

Van Dyke, Beaubien and Van Rensselaer, from the very nature of the case, must have been more intimately acquainted with all the material facts than any witnesses who can now be produced, and might have satisfactorily explained many facts and circumstances which can not now

be explained by others, and which are relied upon as furnishing an inference of fraud.

So far, therefore, from satisfactorily excusing the delay, that delay, under the circumstances, naturally tends to cast suspicion upon the complainant's case. And whatever tendency any of the testimony now in the cause might have to establish the fraud and collusion charged, we can feel no satisfactory assurance that a very different state of facts might not have appeared, fully establishing the validity and good faith of the proceedings, had this suit been brought, and the testimony taken, while those who best knew the facts were able to speak. Nor can we grant the relief asked without just apprehension of doing injury alike to the rights of the living and the memory of the dead.

The decree of the court below dismissing the bill must be affirmed, with costs.

MARTIN Ch. J. and COOLEY J. concurred.

CAMPBELL J. did not sit in this case.