*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVENS MINERAL COMPANY, LLP,

      Plaintiff-Appellee,

v

RICHARD C. STEVENS,

      Defendant-Appellant.

UNPUBLISHED
October 13, 2022

No. 360238
Grand Traverse Circuit Court
LC No. 2020-035607-CZ

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

In this partnership dispute, defendant appeals as of right an order awarding damages in the amount of $150,000 to plaintiff on a claim for an accounting under the Uniform Partnership Act (UPA), MCL 449.1 *et seq*. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The partnership at issue in this case—known as the Stevens Mineral Company[1]—was a family partnership, formed in 1979. The family members who formed the original partnership were children and grandchildren of Gertie and George Stevens, who had inherited certain mineral rights in Montmorency County, Michigan, from George and Gertie. According to the partnership agreement, the partnership was formed to "develop said mineral lands." The family members transferred their mineral rights into the partnership in exchange for shares in the partnership. There were, at times, more than 70 partners in the partnership. In practice, the partnership derived its revenue from leasing its mineral rights to other entities and receiving royalties from those leases.

Defendant was one of the original partners in 1979, and he was one of three managing partners from 1982 until February 2018. In 2018, defendant sold his partnership shares and left

---

[1] The partnership was originally a general partnership under the UPA. According to the parties, in 2020, the partnership amended its agreement and registered as a limited-liability partnership. The parties agree, however, that the UPA governs this dispute.

the partnership. At the same time, a total of approximately 69% of the partners sold their shares and left the partnership. After defendant left the partnership, a "new management committee" took power and began investigating defendant's activities as managing partner. The new committee sent defendant a letter demanding an accounting under the UPA. Defendant did not respond to this request.

In December 2020, the partnership then filed the current lawsuit against defendant. The partnership's complaint contained three claims: (1) an accounting under the UPA, (2) breach of fiduciary duty, and (3) unjust enrichment. In general terms, the factual allegations underlying these claims involved three types of activities engaged in by defendant: (1) purchasing other partners' shares at below market rates without adhering to the requirements in the partnership agreement, (2) personally benefiting from overriding-royalties and working interests related to leases on mineral rights owned by the partnership, and (3) using partnership funds to pay for his legal expenses in a prior lawsuit with another family member, who was also a partner. Notably, the alleged wrongdoing engaged in by defendant occurred between approximately 2002 and 2013.

In the trial court, defendant twice moved for summary disposition on several grounds, including statute of limitations, laches, and failure to state a claim.[2] In ruling on defendant's motions, the trial court concluded that the statute of limitations barred the partnership's claim for breach of fiduciary duty and that the unjust-enrichment claim could not proceed when there was an express partnership agreement. Accordingly, the trial court dismissed these claims. In comparison, the trial court denied summary disposition with respect to the accounting claim, concluding that the claim was subject to a six-year statute of limitations that began to run when the partnership dissolved in February 2018, meaning that the partnership's claim in 2020 was timely. The trial court also rejected defendant's laches argument.

Aside from timeliness concerns, the trial court concluded that the partnership's claims related to defendant's legal fees lacked merit because those fees had been approved at an annual meeting in 2003. However, on the undisputed facts, the trial court determined that defendant had to account to the partnership for acts of self-dealing, specifically: "(1) purchasing/selling Partnership interests without first offering the interests to the other partners, in violation of Section XV of the Agreement; (2) personally benefiting from receipt of royalty interests for Partnership leases; and (3) personally benefiting from purchase of working interests in property leased by the Partnership." Accordingly, the trial court denied defendant's motion for summary disposition and instead granted summary disposition to the partnership under MCR 2.116(I)(2). The trial court did not, however, determine an amount for which defendant must account. A trial was scheduled to address the amount of damages.

However, following the trial court's summary-disposition rulings, the parties entered into a settlement in the amount of $150,000, and the trial court entered a stipulated order regarding damages. The parties' stipulation preserved defendant's right to appeal the trial court's summary-disposition ruling, and defendant now appeals as of right, challenging the trial court's summary-

---

[2] In his motions for summary disposition, defendant also requested sanctions on the basis that the partnership's claims were frivolous and filed merely to harass him.

disposition rulings with regard to the statute of limitations, laches, and issues related to the merits of the accounting claim.

## II. STATUTES OF LIMITATIONS

On appeal, defendant first argues that the trial court erred by treating the partnership's claim as a timely accounting claim when, in substance, the partnership's claims are for breach of fiduciary duty or breach of the partnership agreement, both of which are barred by the applicable statute of limitations. According to defendant, the partnership may not "bootstrap" these untimely claims to an accounting claim under the UPA. We disagree.

We review de novo a trial court's decision whether to grant a motion for summary disposition. *In re Gerald L Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015). Absent a factual dispute, whether a claim is barred by a statute of limitations also presents a question of law that this Court reviews de novo. *Id*. Any questions of statutory interpretation are reviewed de novo. *Id*.

In this case, Count I of the partnership's complaint involved a claim for an accounting under the UPA. A partnership-accounting claim under the UPA—as a statutory claim without its own statute of limitations—is subject to the six-year, catchall statutory limitations period in MCL 600.5813. See *Reindel v Reindel*, 253 Mich 680, 682; 235 NW 861 (1931) (applying six-year limitations period from 1929 CL 13976, a predecessor to MCL 600.5813, to an accounting claim). See also *Estes v Idea Engineering & Fabrications, Inc*, 250 Mich App 270, 285; 649 NW2d 84 (2002) (concluding that the catchall period of limitations in MCL 600.5813 applied to a statutory claim when the statute "creates a separate cause of action and does not contain its own statute of limitations"). With regard to when such a claim accrues, by statute, "[t]he right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary." MCL 449.43. See also *Reindel*, 253 Mich at 682. For purposes of when dissolution occurs, the UPA provides: "[t]he dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." MCL 449.29. Notably, when a timely claim for an accounting is brought, the accounting period is not necessarily limited to the six years preceding the filing of suit, but may potentially encompass the length of the partnership. See, e.g., *Reindel*, 253 Mich at 682 (involving an accounting spanning the years 1911 to 1925); see also Crane & Bromberg, Law of Partnership (1968), § 72, pp 410-411 (recognizing that an accounting encompasses scrutiny of "all activities related to the partnership").

As applied in this case, the partnership dissolved in 2018 when defendant and many of the partners sold their interests and left the partnership. See MCL 449.29. Upon dissolution, the six-year period of limitations for an accounting began to run. See MCL 449.43.[3] The partnership filed suit in December 2020, within the six-year limitations period. And in bringing an accounting

---

[3] Defendant does not argue that the partners agreed to a different accrual time. See MCL 449.43.

claim, the partnership was not necessarily limited to the six-year period before commencement of the suit. See *Reindel*, 253 Mich at 682. In short, as an accounting claim, the partnership's claim in 2020 was not barred by the statute of limitations.

Although seeming to concede that an accounting claim would be timely, in the trial court, and on appeal, defendant argues that the accounting claim is actually a claim for a breach of fiduciary duty, and defendant asserts that the partnership may not bootstrap an untimely, fiduciary-duty claim to an accounting claim. In this regard, a claim for breach of fiduciary duty is subject to a three-year period of limitations under MCL 600.5805. See *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005). Such a claim accrues when the party claiming a breach of fiduciary duty "knew or should have known of the breach." *Id*.

In this case, the partnership attempted to plead a claim for breach of fiduciary duty, but the trial court dismissed the claim—filed in 2020—as untimely because it was clear that the partnership knew, or should have known, of defendant's alleged breaches as of the annual meeting in August 2015, at the absolute latest. Indeed, in many cases, the partnership's complaints were clearly known—and discussed—much earlier, including at annual meetings in 2003 and 2004. Consequently, as recognized by the trial court, the partnership's claim for breach of fiduciary duty was barred by the applicable statute of limitations. Indeed, the partnership does not dispute that its claim for breach of fiduciary duty was properly dismissed by the trial court.

The pivotal issue on appeal is whether the partnership's accounting claim is properly characterized as a claim for an accounting under the UPA or whether it is, in substance, simply a time-barred claim for a breach of fiduciary duty. In this regard, a party may not avoid the applicable statute of limitations by using "artful drafting." *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229; 859 NW2d 723 (2014) (quotation marks and citation omitted). When considering which statute of limitations applies, this Court is not bound by a party's label for a claim but will instead "consider the gravamen of the suit based on a reading of the complaint as a whole." *Id*. (quotation marks and citation omitted). If, however, the same set of factual allegations could support "either of two distinct actions, the applicable limitations period is the one controlling the theory actually pled." *Wilkerson v Carlo*, 101 Mich App 629, 631-632; 300 NW2d 658 (1980). See also *Redmond v Heller*, 332 Mich App 415, 434 n 8; 957 NW2d 357 (2020) (recognizing distinct causes of action may be supported by the same set of facts). "The type of interest allegedly harmed is the focal point in determining what limitations period controls." *Wilkerson*, 101 Mich App at 631.

Although the partnership's allegations may potentially support either a breach-of-fiduciary-duty claim or an accounting claim, the trial court did not err by concluding that the partnership had stated a claim for an accounting and by applying the limitations period for an accounting to this claim. Under the UPA, there are several circumstances in which an accounting may be had as set forth in MCL 449.21, MCL 449.22, and MCL 449.43. Specifically, under the UPA,

> [a]ny partner shall have the right to a formal account as to partnership affairs:

(a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners,

(b) If the right exists under the terms of any agreement,

(c) As provided by section 21,

(d) Whenever other circumstances render it just and reasonable. [MCL 449.22.]

Relevant to Subsection (c), in part, MCL 449.21 in turn states:

(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property[.]

Finally, under MCL 449.43, an accounting may also be had upon dissolution and winding up of affairs as follows:

The right, to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary.

Although there are several circumstances in which an accounting may be had, the question remains what an accounting entails. In this regard, in explaining what an accounting encompasses, this Court has stated:

A formal account or (as it is sometimes called) an accounting is more than a presentation of financial statements. It encompasses a review of all transactions, including alleged improprieties, which should be reflected in the financial statements. It resembles a trustee's accounting.

If a partner asks his co-partners for an account and does not get it, or is not satisfied with it, he may bring an action for an accounting. This is a comprehensive investigation of transactions of the partnership and the partners, *and an adjudication of their relative rights*. It is conducted by the court or, more commonly, by an auditor, referee or master, subject to the court's review. Equitable throughout most of its long history, this action is well adapted to the complexity of partners' relations. But its origins lie in the mutual fiduciary obligations of the partners.

An accounting action is designed to produce and evaluate all testimony relevant to the various claims of the partners. [*Nogueras v Maisel & Assoc of Mich*, 142 Mich App 71, 80; 369 NW2d 492 (1985) (emphasis added and omitted), quoting Crane & Bromberg, Law of Partnership (1968), § 72, p 410.]

In this context—when more than a simple presentation of financial statements is at issue—the parties may present a wide variety of matters to be determined, including issues related to breach of a fiduciary duty or matters regarding ownership of property. In more detail, Crane & Bromberg explained:

> Since *all* activities related to the partnership are subject to scrutiny, *a wide variety* of matters may be determined, for example:
>
> (1) Questions of conventional accounting, such as cash or accrual method of reporting, application of payments, valuation of inventories, type of depreciation, expenses v. capital expenditures, and other factors in computing profit and loss as well as assets and liabilities.
>
> (2) Questions of reconstruction of inadequate records.
>
> (3) Questions of agreement, such as whether a partner was to have a salary, or was to treat an advance to the partnership as a loan (rather than a contribution).
>
> (4) *Questions of fiduciary duty*, such as whether a partner must account for profits from an outside transaction or holds property in trust for the partnership.
>
> (5) Questions of scope of the partnership business, such as whether a particular expenditure was proper, or whether certain profits belong to the partnership or to another business.
>
> (6) Questions of ownership of property, e.g. whether individual or partnership.
>
> (7) Questions of valuation of assets, such as good will. [Crane & Bromberg, Law of Partnership (1968), § 72, pp 410-411 (emphasis added).]

This view of what an accounting entails is consistent with the UPA, which imposes fiduciary duties on partners and which requires partners to account to each other as fiduciaries.[4] See MCL 449.21; MCL 449.22; MCL 449.43. See also MCL 449.20 ("Partners shall render on demand true and full information of all things affecting the partnership to any partner or the legal representative of any deceased partner or partner under legal disability."). Further, Michigan's caselaw similarly supports that, as part of an action for a partnership accounting, a court may be called upon to decide a variety of underlying issues, including matters related to the ownership of property or allegations that a partner breached a fiduciary duty. See, e.g., *Equitable Trust Co v*

---

[4] See also Partnership Law for Securities Practitioners § 2:29 (2021 ed.) ("The UPA specifically authorizes only two forms of action involving partnership: an action for an accounting of the partnership's affairs and a petition for judicial order of dissolution under certain extreme circumstances. In any action for accounting, partners must report on their conduct of the partnership's business and their custody of partnership property. *The partners also may inquire into alleged breaches of fiduciary duties*.") (citations omitted; emphasis added).

*Karos*, 309 Mich 565, 569; 16 NW2d 76 (1944) ("As a necessary incident to the accounting of the copartnership . . . it became necessary to determine whether the machines belonged to the company."); *Penner v De Nike*, 288 Mich 488, 490; 285 NW 33 (1939) ("Copartners are accountable between themselves as fiduciaries."); *Johnson v Ironside*, 249 Mich 35, 45; 227 NW 732 (1929) (recognizing that a partner could be made to account for profits obtained in violation of a partner's fiduciary obligation to the other partners); *Bondy v Davis*, 40 Mich App 153, 158; 198 NW2d 418 (1972) ("As a rule, an accounting suit is maintainable in the case of a fiduciary or trust relation between the parties, under which one party has a right to an accounting and a duty rests upon the other to keep and render an account.") (quotation marks and citation omitted). In the context of an accounting claim, any breach of fiduciary duty is remedied by endeavoring to place "the wronged partners in the economic position that they would have enjoyed but for the breach." *Gilroy v Conway*, 151 Mich App 628, 637; 391 NW2d 419 (1986). In short, an accounting claim under the UPA may properly include allegations based on a partner's breach of fiduciary duty.

That an accounting claim can include allegations based on a breach of fiduciary duty is significant to this case because it means that the partnership's claim against defendant, including its allegations that defendant may be made to account for his breaches of fiduciary duty, is still nevertheless a claim for a partnership accounting under the UPA. In other words, the partnership's claim is not merely an artfully drafted breach of fiduciary duty in the guise of an accounting claim; instead, an accounting claim founded on allegations of breach of fiduciary duties is a distinct cause of action. See *Wilkerson*, 101 Mich App at 631-632. And, in these circumstances, the statutory limitations period for an accounting claim applies to the partnership's claim for an accounting under the UPA. See *id*. As noted, because an accounting claim is subject to a six-year statutory limitations period, and because such a claim does not accrue until dissolution, which in this case occurred in 2018, the partnership's accounting claim under the UPA was timely in 2020. See *Reindel*, 253 Mich at 682; see also MCL 449.43. In short, the trial court did not err by applying the statutory limitations period for an accounting claim and by concluding that the partnership's claim was not time-barred by the statute of limitations period.

Similarly, defendant also argues on appeal that the partnership's claim can be construed as a claim for breach of contract, which would be time-barred by the statutory limitations period applicable to a contract action.[5] In this regard, a claim for breach of contract is subject to a six-year statutory limitations period, and the claim accrues when the breach occurs. *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 355; 771 NW2d 411 (2009). To the extent that the partnership alleges that defendant breached the partnership agreement by purchasing shares without first making the shares available to all partners, defendant contends that this is a breach-of-contract claim that accrued, at the latest, in 2013 when defendant last purchased

---

[5] On appeal, the partnership asserts that defendant failed to preserve—and in fact waived—his assertion that the partnership's accounting claim is, in substance, an untimely claim for breach of contract because defendant failed to raise this issue in the trial court. However, defendant raised this argument in the trial court, specifically in his second motion for summary disposition. This issue is not waived, and by raising the issue in the trial court, defendant preserved this argument. See *Peterman v State Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

shares from other partners, and that the partnership's claim, filed in 2020, was time-barred by the six-year statutory limitations period. See *id*.

However, the same reasoning applicable to the breach-of-fiduciary-duty allegations in context of an accounting claim supports that the partnership agreement may be considered in the context of an accounting. That is, recognized among the wide variety of matters that may be determined in an accounting are "[q]uestions of agreement" between the partners. Crane & Bromberg, Law of Partnership (1968), § 72, p 411. Caselaw likewise supports that a partnership agreement, giving rise to duties between the partners, may be considered in an accounting action. See *Alford v Lehman*, 350 Mich 446, 455-457; 86 NW2d 330 (1957) (considering in the context of an action for accounting and dissolution whether there had been a violation of a partnership agreement); *Gilroy*, 151 Mich at 637 ("[O]ne becomes a fiduciary in partnership only by the contractual undertaking to become a partner."); *Bondy*, 40 Mich App at 159 ("Since a partnership relationship was involved, defendant and plaintiff as partners stand in a fiduciary relationship. This is a matter both of statutory law, MCL 449.21, Supra, and the partnership agreement between these parties."). Indeed, although defendant attempts to frame the question whether he improperly purchased shares as solely a matter of contract, the UPA also imposes a fiduciary duty on Defendant to "render on demand true and full information of all things affecting the partnership to any partner . . . ." MCL 449.20. This provision "has been broadly interpreted as imposing a duty to disclose all known information that is significant and material to the affairs or property of the partnership." *Band v Livonia Assoc*, 176 Mich App 95, 113; 439 NW2d 285 (1989). And the violation of this duty to make "full and frank disclosure of all relevant information" can be considered in the context of a request for an accounting. See *id*. (involving the appointment of a receiver who conducted an accounting to wind-up the business). Consequently, whether viewed as a violation of a fiduciary duty or a violation of the partnership agreement, or both, defendant's alleged failure to make a full and frank disclosure of affairs related to the partnership can be considered in the context of an accounting claim. And, as discussed, the partnership's accounting claim was timely.

In sum, the trial court did not err by applying the statutory limitations period applicable to accounting claims to the partnership's claim for an accounting under the UPA, and the trial court did not err by concluding that the statute of limitations did not bar this claim.

### III. LACHES

Defendant also argues on appeal that the trial court erred by concluding that laches did not bar the partnership's claim. Defendant asserts that the trial court erred as a matter of law by concluding categorically that laches could not apply if the partnership's claim was timely under the statutory limitations period. Further, given the age of the partnership's claims and the partnership's lack of diligence, defendant contends that laches should apply to bar the partnership's accounting claim in this case.

With respect to laches, "this Court reviews a trial court's equitable decisions de novo, but the findings of fact supporting an equitable decision are reviewed for clear error." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). "A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made." *Id*.

As an initial matter, we agree with defendant that the trial court erred by concluding that laches categorically did not apply because the accounting claim was not time-barred by the applicable statute of limitations. Contrary to the trial court's reasoning, "laches may bar a legal claim even if the statutory period of limitations has not yet expired." *Id*. at 456-457. The trial court erred by concluding otherwise. With that said, the facts of this case do not support that laches applies, and the trial court did not err by rejecting defendant's laches defense.

> The doctrine of laches is a tool of equity that may remedy the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert. This doctrine applies to cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party. Generally, [w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized. [*Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005) (quotation marks and citation omitted; alterations in *Wayne Co*).]

Laches is intended to prompt vigilance in pursuing claims and to prevent the enforcement of stale demands. *Knight v Northpointe Bank*, 300 Mich App 109, 114; 832 NW2d 439 (2013). Although the passage of time is important when deciding whether laches applies, delay alone will not result in the application of laches. *Id*. at 114-115. Instead, a defendant asserting laches must prove a lack of due diligence by the plaintiff, and the defendant must show that the lack of diligence resulted in prejudice. *Id*.; *Troy v Papadelis*, 226 Mich App 90, 97; 572 NW2d 246 (1997). Prejudice can arise, for example, when material witnesses have died, or otherwise become unavailable, or when significant evidence has been lost. See *Knight*, 300 Mich App at 119-120. See, e.g., *Henderson v Connolly's Estate*, 294 Mich 1, 18; 292 NW 543 (1940); *Campau v Van Dyke*, 15 Mich 371, 380-381 (1867).

In this case, there is certainly evidence that the partnership failed to exercise due diligence in pursuing at least some of its claims against defendant. Some of the allegations against defendant date to approximately 20 years ago, and even his most recent actions relate to events in 2013, seven years before the partnership filed suit. Among other evidence, a review of the annual meeting minutes demonstrates that many of the issues related to defendant—including at least one of his purchases of a partnership share (from Anthony Stevens), legal fees for a lawsuit, and a possible conflict of interest related to overriding-royalty interests and working interests—were discussed at annual meetings dating as far back as 2003 and 2004. Other issues, including payment of legal fees for the prior lawsuit and working interests, were also discussed in correspondence sent to the partners in 2005. Knowing of potential claims, the partnership failed to exercise due diligence when it waited more than 15 years to take any legal action. In comparison, regarding defendant's more recent activities, such as his purchase of partnership shares, the last of which was purchased in 2013, it is not clear when exactly the partnership first knew about these transactions. At the

latest, these more recent transactions were certainly known to the partnership as of 2015, when the issue was discussed in detail at the 2015 annual meeting.[6]

Regardless whether there has been unreasonable delay and a lack of diligence, defendant cannot show that laches applies because he failed to establish prejudice resulting from the partnership's delay in bringing suit. See *Knight*, 300 Mich App at 114-115. Defendant suggests that an accounting may be difficult because of the passage of time. But he has not identified any witnesses who are unavailable, nor has he identified any material documents or other evidence that has been lost or destroyed. Defendant would presumably be in the best position to recount details of the transactions, and he has been deposed and testified at length about the circumstances at issue. With no indication that material witnesses or evidence is unavailable, and no other explanation how he has been prejudiced by the passage of time, defendant cannot show prejudice. See *In re Runco*, 463 Mich 517, 523; 620 NW2d 844 (2001) (rejecting laches defense related to 12-year-old transactions when the material witnesses were available and testified at length and "the materials that had become unavailable over time did not include any that were necessary for resolution of the central issues"). Absent a showing of prejudice, laches does not apply.

## IV. GROUNDS FOR AN ACCOUNTING

Defendant also argues that the trial court erred by concluding that defendant should be made to account for the conduct at issue in this case. Defendant presents several specific arguments, all of which lack merit.

---

[6] Defendant contends on appeal that knowledge should be imputed to the partnership because the transfers in question were recorded as a matter of public record. Typically, because parties must exercise due diligence in pursuing their rights, a party will be chargeable with knowledge of facts that he or she ought to have discovered, including information that a person may discover from public records. See *Prentis Family Foundation*, 266 Mich App at 45 n 2. However, this rule will not apply if there is a fiduciary relationship "*and* there was nothing indicating the need for investigation." *Id*. (emphasis added). There is a fiduciary relationship between the partners in this case. Whether there was anything indicating the need for investigation is a closer question. Considering the evidence in this case, including the annual partnership meetings and annual sign-in sheets for those meetings, it seems somewhat peculiar that no one thought to investigate why family members were disappearing from the partnership. And, in a partnership with at times more than 70 people, it also seems odd that no one thought to question how defendant, and a few other partners, had obtained relatively sizable shares. That is, at his highest, defendant owned 9.7177% of a partnership in which, according to the attendance sheets for the annual meetings, most of the other partners each owned less than 1%. The argument certainly could be made that there were indications that should have prompted investigation into how defendant obtained his shares. This issue need not be decided, however, because even if the partnership showed a lack of diligence in failing to investigate and pursue its claims, defendant cannot show the prejudice required to warrant the application of laches.

First, defendant again argues that the partnership could not pursue claims for breach of fiduciary duty under the guise of an accounting claim. As already discussed, this argument lacks merit, and the trial court did not err by concluding that the partnership's accounting claim was not time-barred.

Second, defendant argues that he cannot be made to account for attorney fees paid by the partnership on defendant's behalf in a prior lawsuit because the partnership agreed to pay those attorney fees. This argument misconstrues the trial court's grant of summary disposition. That is, the trial court did *not* conclude that defendant had to account for the attorney fees expended in the previous lawsuit. The trial court limited its conclusion that the partnership was entitled to an accounting to the issues related to (1) offering partnership shares before purchasing them, (2) overriding-royalty interests, and (3) working interests. Indeed, in a footnote in its decision, the trial court noted that "[t]he payment of Defendant's legal fees was previously resolved by the Court," and this issue was previously resolved in defendant's favor, with the trial court agreeing with defendant's assertion that the partnership had approved payment of attorney fees in 2003.[7] On this record, defendant's arguments related to attorney fees for a prior lawsuit do not warrant relief on appeal.

Third, related to overriding-royalty interests and working interests, defendant argues that he cannot be made to account for these transactions because they did not relate to the partnership's conduct or the partnership's property but were instead interests obtained from lessees, after the partnership had already leased its mineral rights to the lessees. Relevant to defendant's arguments, MCL 449.21(1) provides that

> [e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

This language is fairly broad; that is, it is not limited to accountings for transactions undertaken by the partnership, but instead requires an accounting for "any transaction *connected with*" the "conduct" of the partnership. MCL 449.21(1) (emphasis added). In this respect, it is long-settled that a partner's fiduciary duties are not confined to transactions conducted by the partnership, but can include a partner's personal transactions with third parties when those transactions are connected to the partnership's interests and involve misappropriation of a partnership opportunity.

---

[7] Consistent with the trial court's ruling, the breakdown of damages in the settlement supports that fees were not awarded for the *prior* lawsuit. The settlement specified that the damages were as follows: $90,603.34 (regarding Defendant's acquisition and sale of partnership shares); $1,000.00 (regarding Defendant's acquisition of an overriding royalty interest); $38,396.66 (regarding Defendant's acquisition of a working interest on 6-12 well and section 26 well); and $20,000.00 (offer of judgment sanctions, attorney fees and costs). There is no mention of an award for attorney fees from a *prior* lawsuit.

More fully, describing partners' obligations of good faith and fair dealing, the Supreme Court long ago explained:

> The general principles on which the court proceeded admit of no question, it being well settled that one partner cannot, directly or indirectly, use partnership assets for his own benefit; that he cannot, in conducting the business of a partnership, take any profit clandestinely for himself; that he cannot carry on the business of the partnership for his private advantage; that he cannot carry on another business in competition or rivalry with that of the firm, thereby depriving it of the benefit of his time, skill, and fidelity, without being accountable to his copartners for any profit that may accrue to him therefrom; that he cannot be permitted to secure for himself that which it is his duty to obtain, if at all, for the firm of which he is a member; nor can he avail himself of knowledge or information which may be properly regarded as the property of the partnership, in the sense that it is available or useful to the firm for any purpose within the scope of the partnership business. [*Johnson*, 249 Mich at 45 (quotation marks and citation omitted).]

As applied in this case, defendant takes a narrow view of the partnership's "conduct" and asserts that it consisted of nothing more than leasing mineral rights to others and receiving royalty payments for those leases. With this narrow view in mind, defendant contends that, once the partnership's mineral rights had been leased, he was free to personally obtain working interests and overriding-royalty interests from the lessees without offering those opportunities to the partnership and without informing the partnership. However, the partnership agreement specified that the partnership was formed to "to engage, directly or indirectly, in the sale, purchase, lease, transfer, assignment, development, discovery or production of minerals or mineral interests." Given the partnership's stated purpose, defendant should not have availed himself of information and opportunities within the scope of the partnership's business purpose, particularly when those opportunities arose because the partnership leased its rights to the lessees who in turn made these opportunities available to defendant. Under MCL 449.21(1), defendant may be made to account for profits from these transactions connected with the partnership's conduct.

Fourth, related to the overriding-royalty interests and working interests, defendant also contends that he should not be made to account because the partnership obtained a benefit from defendant's conduct in the form of royalties, which would not have been generated if defendant had not invested to ensure the development of the mineral rights in question. Contrary to defendant's argument, this incidental benefit to the partnership does not resolve the questions whether defendant breached a duty by usurping an opportunity that should have been presented to the partnership, see *Johnson*, 249 Mich at 45-48, or by failing to make full and frank disclosures to the partnership, see *Band*, 176 Mich App at 113. Had the partnership been given the opportunity rather than defendant, the partnership still would have received royalties, and it would have also had the additional benefit of overriding-royalties and the working interest. Cf. *Johnson*, 249 Mich

-12-

at 46-48.[8]  In short, defendant's argument that he incidentally benefited the partnership does not excuse him from accounting for the profits that he personally received from the transaction.[9]

Lastly, defendant asserts that he should not be made to account because the partnership consented to the various transactions at issue.  In this regard, under MCL 449.21(1), a partner's obligation to account extends to accounting for "any profits derived by him *without the consent* of the other partner . . . ."  (Emphasis added.)  For the most part, defendant's claim of "consent" does not involve actual consent by the other partners but rather the partners' failure to immediately object when they knew, or should have known, that defendant had purchased other partners' interests or that he had obtained overriding-royalty interests and working interests.[10]  Defendant provides no authority, however, to support that the partners "consented" within the meaning of MCL 449.21(1) by failing to make a more timely objection.  "This Court will not search for authority to sustain or reject a party's position."  See *Hughes v Almena Twp*, 284 Mich App 50, 71-72; 771 NW2d 453 (2009).  Absent supporting authority, we consider defendant's consent argument to be abandoned, and he is not entitled to relief on this basis.  See *id*.

## V.  SANCTIONS

Lastly, defendant argues that the trial court erred by failing to award defendant sanctions under MCR 1.109(E) when the partnership's claims were frivolous and filed merely to harass defendant.  In making this argument, defendant reiterates his assertions that the partnership cannot pursue an untimely breach-of-fiduciary-duty claim or breach-of-contract claim under the guise of an accounting claim.  And he asserts that the partnership's attempt to do so was frivolous and

---

[8] Indeed, according to *Johnson*, a partner may be held accountable for usurping a partnership opportunity even if there has not been a showing that the other partners would have availed themselves of the opportunity.  See *Johnson*, 249 Mich at 47-48 ("Nor does liability rest upon such other considerations urged by defendants as that defendants had no power to bind plaintiffs to the payment of a purchase price or fulfilment of the conditions of the transaction, *or that plaintiffs would not have participated in it had they been asked*, or that defendants thought they had a right to do what they did.") (emphasis added).

[9] At most, issues related to whether the partnership suffered any harm, or received any benefit from defendant's activities—and whether defendant should have received an offset for the amount he invested to obtain the interests in question—may have perhaps impacted the amount of profits or damages for which defendant had to account.  But defendant chose not to litigate the question of damages and instead entered into a settlement agreement.  At this point, any issues related to the *amount* for which defendant must account, as determined in the parties' settlement and set forth in the stipulated judgment, are not properly before us.  See *Walker v Walker*, 155 Mich App 405, 406-407; 399 NW2d 541 (1986) ("Absent fraud, mistake or unconscionable advantage, a consent judgment cannot be set aside or modified without the consent of the parties, nor is it subject to appeal.") (citation omitted).

[10] The only express consent defendant identifies relates to the partners' unanimous approval of legal fees for a prior lawsuit at the 2003 annual meeting.  However, as noted, the trial court did not find that defendant had to account for these legal fees.

-13-

merely an attempt to harass defendant. However, for the reasons discussed, we agree with the trial court that the partnership brought a timely accounting claim under the UPA. The timely claim was well-founded in the facts and the law, see *Kelsey v Lint*, 322 Mich App 364, 379; 912 NW2d 862 (2017), and there is no basis to conclude that the partnership brought—what proved to be a meritorious claim—merely to harass defendant. In these circumstances, sanctions under MCR 1.109(E) were unwarranted, and the trial court did not err by failing to sanction the partnership.

Affirmed.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra